# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ETHAN LEE PALMER, | No. 22-CV-113 CJW-KEM |
| Plaintiff, | **INITIAL REVIEW ORDER** |
| vs. | |
| BRIAN GARDNER, *et al.*, | |
| Defendants. | |

This matter is before the Court on plaintiff Ethan Lee Palmer's motion to proceed in forma pauperis (Doc. 1) and pro se civil rights complaint (Doc. 1-1). In his complaint, plaintiff raises claims under both Title 42, United States Code, Section 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] He alleges defendants failed to protect him while he was incarcerated as a material witness at Linn County Jail. For the reasons set forth below, the Court allows plaintiff's claims to proceed.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff did not submit the statutory filing fee. *See* 28 U.S.C. § 1914(a) (requiring filing fee). In order for a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement

---

[1] *Bivens* allows persons claiming a constitutional violation to assert a monetary claim against individuals working for the federal government. "The effect of [*Bivens*] was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to [a 42 U.S.C.] § 1983 action against state officials." *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980); *see also Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337–38 (9th Cir. 1987).

of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2).

Plaintiff, a pretrial detainee at Black Hawk County Jail, has submitted documents (Doc. 1) that substantially comply with the requirements set out above. Because it is clear that he does not have the assets necessary to pay the filing fee, his motion to proceed in forma pauperis is granted. Nevertheless, even when the court deems it appropriate to grant a prisoner-plaintiff in forma pauperis status, that plaintiff is required to pay the full $350.00 filing fee by making payments on an installment basis. 28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Plaintiff must pay an initial partial filing fee in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Based on the documents that plaintiff submitted, the Court finds that the initial partial filing fee is $13.75. (Doc. 1, at 3). Plaintiff must submit $13.75 by no later than 30 days from the date of this order. If the Court does not receive payment by this deadline, the instant action will be dismissed under Federal Rule of Civil Procedure 41(b) (permitting dismissal when a plaintiff either fails to prosecute or fails to respond to an order of the court); *Hutchins v. A.G. Edwards & Sons*, 116 F.3d 1256, 1259–60 (8th Cir. 1997)

(explaining a court's power to dismiss an action). If necessary, plaintiff may request in a written motion an extension of time to pay the initial partial filing fee.

In addition to the initial partial filing fee, a prisoner-plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after plaintiff pays in full the initial partial filing fee discussed above, the remaining installments will be collected by the institution having custody of him. The Clerk of Court's Office is directed to send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where plaintiff is an inmate.

## II. INITIAL REVIEW STANDARD

Courts must liberally construe pro se complaints. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Nevertheless, the Court may dismiss an in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment. 28 U.S.C. § 1915(e)(2).

3

In reviewing an in forma pauperis complaint, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, still must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). In determining whether a complaint fails to state a claim under Section 1915(e)(2), courts generally rely on the standards articulated under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Section 1915(e)(2), a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *Id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

### III. INITIAL REVIEW ANALYSIS

#### A. Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).

Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. *Bivens Standard*

The Eighth Circuit has stated that, "[a]s a general rule, *Bivens* claims and § 1983 claims are almost identical and involve the same analysis." *Solomon v. Petray,* 795 F.3d 777, 789 n.7 (8th Cir. 2015). "An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999); *see also Wright v. United States,* 813 F.3d 689, 695 (8th Cir. 2015) (applying excessive force standards in a *Bivens* action against U.S. Marshals).

### C. *Initial Review Analysis*

Plaintiff asserts that defendants violated his Eighth and Fourteenth Amendment rights. He names Linn County Sheriff Brian Gardner, Linn County Jail Administrator

Pete Wilson, Assistant United States Attorney ("AUSA") Patrick Reinert, and the United States Marshals Service, all in individual and official capacities, as defendants. (Doc. 1-1, at 2-3). The Court construes plaintiff's complaint as asserting *Bivens* claims against defendants Reinert and the U.S. Marshals Service and Section 1983 claims against defendants Gardner and Wilson. Plaintiff requests monetary damages. (*Id.*, at 10).

Plaintiff asserts that, on May 27, 2022, he was brought to the Linn County Jail as a material witness to secure his testimony against an individual named Buehler. (Doc. 1-1, at 10). He asserts that during intake he informed "every jailer I saw that I was a material witness and wanted protective custody," but an hour or two after being placed in a single cell plaintiff was moved to a general population pod. (*Id.*, at 11). That pod included inmate Blahnik, who had been bunkmates with Buehler, the individual against whom plaintiff was to testify. (*Id.*). Plaintiff contends that, after his bunkmate informed him inmates were waiting for a "snitch" and he saw Buehler's name on the phone sign-up and knew he was in Buehler's old bunk, "I again pleaded with jail staff for [a] single cell and was ignored." (*Id.*). Plaintiff asserts that minutes later he was punched in the face and then violently attacked by Blahnik and another inmate while he lay unconscious. (*Id.*, at 11-12). Plaintiff states that Blahnik was a convicted inmate sentenced to 57 years for a fatal stabbing. (*Id.*, at 6). He also asserts that it was "well-known that Blahnik and Buehler were friends" and that Buehler knew plaintiff was to be in custody and arranged the assault prior to plaintiff's arrest. (*Id.*, at 12). After plaintiff regained consciousness and alerted staff with the emergency call button, he was treated at Mercy Hospital and University of Iowa Hospitals and Clinics and asserts that days later he testified against Buehler. (*Id.*). He contends that he incurred several injuries from the attack, including

6

orbital fractures, but that Black Hawk County has refused many of his medical requests.[2] (*Id.,* at 13-14). Plaintiff asserts that after the assault he was segregated and then transferred to a different institution. (*Id.,* at 17).

### 1. *Section 1983 Claims*

Plaintiff asserts that defendants Gardner and Wilson were deliberately indifferent by assigning him to the general population pod with a "violent, sentenced offender" and by "failing to require U.S. Marshals and United States Attorney Patrick Reinert to include necessary information to assign and/or classify Palmer appropriately." (*Id.,* at 5). He contends that Gardner and Wilson violated his Eighth and Fourteenth Amendment rights by not adhering to a jail policy that assignments are based on an evaluation of charges, nature of confinement, and special segregation needs and "stood idly by while it was violated." (*Id.*). He also bases his deliberate indifference claim on their lack of compliance with a jail policy that provides that pretrial detainees may be segregated from non-pretrial detainees, whenever possible. (*Id.,* at 6). He asserts that "Mr. Blahnik had exhibited extreme violence and was not a pre-trial detainee. Palmer, a material witness and informant, should never have been moved to a pod with Drew Blahnik." (*Id.,* at 6). Plaintiff attaches emails to his complaint in which Gardner states that the U.S. Marshals Service did not advise his office of any "no contacts" between Palmer and Blahnik and a lack of information is common. (*Id.,* at 5, 22). Plaintiff contends that Gardner and Wilson should have required the federal officials to provide necessary information to classify plaintiff. (*Id.,* at 5). In addition, plaintiff asserts that defendants erred when they "kept Blahnik in a general population pod after [being] sentenced to a violent crime" and, noting Linn County Jail's record of violence, asserted that they "failed to maintain

---

[2] Plaintiff has not asserted claims against employees at Black Hawk County Jail for deliberate indifference of his medical needs.

adequate safeguards for inmates, knew they were inadequate, and covered up the inadequacies with in-house investigations." (*Id.,* at 6-7). More generally, plaintiff asserts defendants Gardner and Wilson "failed to provide adequate monitoring systems, failed to properly investigate, failed to improve and most importantly failed to want to get better." (*Id.,* at 8).

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1988) (en banc) (pretrial detainee). A prison official violates the Eighth Amendment when he acts with deliberate indifference to a substantial risk of harm to the inmate. *Farmer*, 511 U.S. at 834. To show deliberate indifference, the plaintiff must prove both that he was incarcerated under conditions posing a substantial risk of harm and that the official had a subjectively culpable state of mind. *Id*. To satisfy the second component of this claim, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, he must demonstrate that the official knew the risk existed but recklessly disregarded it. The required element of subjective knowledge may be established if a plaintiff "presents evidence of 'very obvious and blatant circumstances' indicating that the defendant knew the risk existed." *Spruce v. Sargent,* 149 F.3d 783, 786 (8th Cir. 1998). Negligence is not sufficient to establish that defendants acted with deliberate indifference. *See Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).

Here, plaintiff alleges facts that support that he was exposed to conditions posing a substantial risk of harm when he was placed in the same general population pod that had housed the inmate against whom he was going to testify along with that inmate's bunkmate who was convicted of murder. Turning to the subjective prong, plaintiff has asserted that he repeatedly informed jail staff that he was a material witness and requested

8

protection or a single cell. Plaintiff asserts Gardner and Wilson knew of the request to detain plaintiff by the federal officials but did not require further information about plaintiff. Even though plaintiff has not explicitly alleged that Gardner and Wilson knew that plaintiff was to testify against an inmate, he has alleged they were aware of the dangers posed by Blahnik and were deliberately indifferent to the risk he presented to pretrial detainees. At this early juncture, plaintiff asserts enough to proceed with this claim.

### 2. *Bivens* Claims

Plaintiff asserts that AUSA "Reinert and unidentified U.S. Marshalls failed to provide pertinent and necessary information to Linn County Jail that is required per jail policy." (Doc. 1-1, at 9). He contends that they should have alerted jail staff to his "unique remand status" and that defendants Gardner and Wilson have "shared through emails that it was the U.S. Marshal's fault, specifically Patrick Reinert" for not giving that information to the Linn County Jail staff. (*Id.*).

As an initial matter, plaintiff identifies the U.S. Marshals Service as a defendant on his Section 1983 form, and the U.S. Marshals Service is not a proper defendant. (Doc. 1-1, at 3). The Supreme Court has stated that, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiffs cannot bring a *Bivens* action directly against a federal agency. *F.D.I.C. v. Meyer,* 510 U.S. 471, 484-85 (1994). "*Bivens* allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations." *Patel v. United States Bureau of Prisons,* 515 F.3d 807, 812 (8th Cir. 2008) (citation omitted); *see also Richmond v. US Marshals,* No. 19-CV-19-CJW-MAR, 2020 WL 959244, at *3 (N.D. Iowa Feb. 27, 2020*), aff'd sub nom. Richmond v. U.S. Marshals,* No. 20-1758, 2020 WL 6039107 (8th

Cir. Aug. 24, 2020) (dismissing *Bivens* claim against defendant "U.S. Marshalls"). Accordingly, to the extent that plaintiff is making a claim against the U.S. Marshals Service, it must be denied.

To the extent plaintiff is asserting a claim against unknown individual Marshals whose identify can be learned through discovery, that claim is allowed to proceed. *See Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir. 1985) ("Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention."). The identity of any U.S. Marshal who was tasked with securing defendant's testimony and was responsible for communicating with Linn County Jail is discoverable.

Turning to Assistant U.S. Attorney Reinert, prosecutors are afforded either absolute immunity or qualified immunity from an action for damages depending on how they are functioning at the relevant time period. In *Imbler v. Pachtman*, the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler,* 424 U.S. 409, 431 (1976). "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Prosecutors are entitled only to qualified immunity, however, when their actions are "investigatory" or "administrative" in nature. *Buckley v. Fitzsimmons,* 509 U.S. 259, 272 (1993). "Importantly, the 'function' is evaluated from the time it is performed: 'A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation for a possible trial.'" *Richter v. Smith,* No. C16-4098-LTS, 2018 WL 6728515, at *3 (N.D. Iowa Dec. 21, 2018) (citation omitted). Courts have afforded only

10

qualified immunity to some prosecutors in failure to protect claims for witnesses. S*ee, e.g., Ying Jing Gan v. City of New York,* 996 F.2d 522, 531 (2d Cir. 1993) (finding prosecutor only could be accorded qualified immunity for failure to protect witness because claim that prosecutor failed to protect witness "is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings"); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir. 1987) (finding that prosecutor's failure to provide police protection to witness involved investigative duties and was not entitled to absolute immunity when record demonstrated that government was still actively pursuing its investigation and was not yet in the process of prosecution). It may very well be that under this standard defendant Reinert is entitled to qualified immunity. *See, e.g., Ying Jing Gan*, 996 F.2d at 533-35 (granting qualified immunity to prosecutor on failure to protect claim); *Latimore v. Widseth*, 7 F.3d 709, 712-13 (8th Cir. 1993) (granting qualified immunity to prosecutor on failure to protect claim because prosecutor "had neither the responsibility nor the ability to protect the prisoner from such harm."); *Morris v. Doyle*, No. 4:07CV1629 JCH, 2010 WL 2326042, at *7 (E.D. Mo. June 8, 2010) (granting qualified immunity to prosecutor on failure to protect claim, noting that "it is the responsibility of prison officials to protect inmates from harm, not that of state prosecutors" and that prosecutors have no authority to order actions be taken to protect inmates). At this early stage, however, defendant Reinert's role is not clear such that the Court is able to determine, what, if any, immunity may apply. Because plaintiff's factual allegations are sufficient to set forth a claim that Reinert knew of a substantial risk of serious harm existed but disregarded that risk, this claim will be allowed to proceed.

### IV. APPOINTMENT OF COUNSEL

Under Title 28, United States Code, Section 1915(e)(1) "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil

11

case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). "The [district] court has a good deal of discretion to determine whether representation is warranted given the nature of the case and the litigants." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006); *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).

> When determining whether to appoint counsel for an indigent civil litigant, the district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim. *See Johnson v. Williams*, 788 F.2d 1319, 1322–23 (8th Cir. 1986).

*Stevens*, 146 F.3d at 546; *see also Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (stating that the court should consider: 1) the factual complexity of the issues; 2) the ability of the plaintiff to investigate the facts; 3) the existence of conflicting testimony; 4) the ability of the plaintiff to present their claims; and 5) the complexity of the legal arguments). However, those factors are not exclusive, and the court may consider other issues. *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 891 (8th Cir. 2020) (reversing the district court's denial of a motion to appoint counsel after finding that the plaintiff presented "a serious claim" and the "the case otherwise cannot proceed to a timely decision on the merits" without the assistance of counsel).

After reviewing plaintiff's complaint, along with the attached documents, the Court finds that plaintiff would benefit from the appointment of counsel. Specifically, plaintiff's claim will include somewhat complicated discovery, including discovery of unknown defendant(s). Because that type of discovery is beyond the ability of an incarcerated individual to complete, the Court finds that appointment of counsel is appropriate.

## V. CONCLUSION

For the reasons stated:

1. Plaintiff's motion to proceed in forma pauperis (Doc. 1) is **granted;**
2. The Clerk of Court will file the complaint (Doc. 1-1) without the prepayment of fees;
3. Plaintiff is ordered to submit an initial partial filing fee of $13.75 by no later than thirty days from the date of this order. If necessary, he may request in a written motion an extension of time to pay the initial partial filing fee. Additionally, after plaintiff pays the initial partial filing fee, the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in Title 28, United States Code, Section 1915(b)(2). Until the $350.00 filing fee is paid in full, plaintiff must pay and the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in Section 1915(b)(2). Until the $350.00 filing fee is paid in full, plaintiff must pay and the institution having custody of him must forward 20 percent of the preceding month's income credited to his account each time the amount in the account exceeds $10.00;
4. The Clerk of Court is directed to send a copy of this order and the notice of collection of the filing fees to the appropriate official at the facility where plaintiff is an inmate;
5. After an initial review, plaintiff's complaint (Doc. 1-1) will be allowed to proceed with regard to plaintiff's claim that the defendants were deliberately indifferent to his safety when he was incarcerated at Linn County Jail;
6. To the extent that plaintiff named the U.S. Marshals Service as a defendant, that defendant is dismissed.
7. The Clerk of Court is directed to appoint counsel for plaintiff.

8. The Clerk of Court is directed to serve, via certified mail, the complaint (Doc. 1-1), along with a copy of this order and the waiver of service of summons form,[3] on the state defendants in care of the Linn County Correctional Center and the U.S. Attorney's Office.[4] The Clerk of Court is also directed to send a copy of this order, along with the complaint, to the Linn County Attorney's Office.

**IT IS SO ORDERED** this 15th day of November, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[3] The Clerk of Court may send one packet to the Linn County Correctional Center and one packet to the U.S. Attorney's Office including the documents for each defendant.

[4] Alternately the Clerk of Court may designate an employee to personally serve a representative of the U.S. Attorney's Office. If the Clerk of Court personally serves the documents set out above, the designated employee shall file on the docket an affidavit memorializing the time, manner and completion of service, along with a notation of who accepted service on behalf of the U.S. Attorney's Office.

TO:  WARDEN/ADMINISTRATOR
     Black Hawk County Jail, Waterloo, Iowa

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Ethan Lee Palmer, an inmate at your facility, filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Palmer v. Gardner, et al.*, Case No. 22-CV-0113-CJW-KEM. The inmate was granted in forma pauperis status under Title 28, United States Code, Section 1915(b), which requires partial payments of the $350.00 filing fee. Based on the inmate's statements, the court has assessed an initial partial filing fee of $13.75, which the inmate must pay now to the Clerk of Court. *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after the inmate pays the initial partial filing fee of $13.75, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed. If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him. Any institution having custody of the above-named inmate shall collect and remit the filing fees as set forth above.

_____ Deputy Clerk
Paul De Young
U.S. District Court Clerk
Northern District of Iowa