IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| ETHAN LEE PALMER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-CV-00113 CJW-KEM |
| | ) | |
| v. | ) | PALMER'S FIRST |
| | ) | AMENDED COMPLAINT |
| BRIAN GARDNER, PETER WILSON, | ) | |
| UNKNOWN NAMED AGENTS OF THE | ) | |
| LINN COUNTY SHERIFF'S OFFICE, | ) | |
| PATRICK REINERT, and UNKNOWN | ) | |
| NAMED AGENTS OF THE U.S. | ) | |
| MARSHALS SERVICE | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Ethan Lee Palmer ("Palmer") files this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).[1]

Introduction

1. Palmer's reward for reporting federal offenses and assisting the U.S. government in the investigation and prosecution of a federal criminal defendant was to be brutally assaulted by other inmates while he was in the custody of Defendants while held at the Linn County Correctional Center ("LCCC") prior to giving testimony. A post-assault photograph of Palmer is below:

---

[1] To the extent not included in this First Amended Complaint, the allegations of Palmer's original *pro se* Complaint for Violation of Civil Rights (Doc. 3) are incorporated in this First Amended Complaint.



(*See also*, First Am. Complt. Ex. 1, "Government's Sentencing Memorandum", "Government's Sentencing Brief and Motion for Upward Departure and/or Variance", and exhibits, filed 12/30/2022 in *U.S. v. Buehler* (NDIA Case No. 21-CR-2006-CJW-MAR, at pp. 28-30.) Defendants had a duty, but failed, to prevent this.

2. Palmer still testified for the U.S., despite his extensive injuries and fear arising from the assault.

3. To add insult to injury, the various parties responsible for Palmer's safety during this ordeal have all refused to accept any responsibility, and appear more interested in pointing fingers and blaming others for the assault.

4. Meanwhile, despite his assistance and testimony in support of the prosecution, Palmer lingers in the Black Hawk County Jail, cast aside and forgotten by those he aided and who were responsible for his safety.

5. Ultimately, Palmer's is (at least) a cautionary tale to anyone considering

providing assistance to the U.S. government against a criminal defendant, entirely preventable by the Defendants and one that could be (should have been) remedied.

## Parties

6. Palmer is an individual and currently an inmate in the Black Hawk County Jail located in Waterloo, Iowa.

7. Defendant Brian Gardner ("Gardner") was the Linn County Sheriff during the relevant times of this First Amended Complaint.

8. Defendant Peter Wilson ("Wilson") was the Jail Administrator with the Linn County Sheriff's Office during the relevant times of this First Amended Complaint.

9. Defendants Unknown Named Agents of the Linn County Sheriff's Office were employees and/or others acting under color of law on behalf of and/or at the direction of the Linn County Sheriff's Office during the relevant times of this First Amended Complaint. Collectively, these Defendants, along with Gardner and Wilson, are hereafter referred to as the "Linn County Defendants".

10. Defendant Patrick Reinert ("Reinert") was an Assistant United States Attorney in the Northern District of Iowa during the relevant times of this First Amended Complaint.

11. Defendants Unknown Named Agents of the U.S. Marshal's Service were employees and/or others acting under color of law on behalf of and/or at the direction of the U.S. Marshal's Service during the relevant times of this First Amended Complaint. Collectively, these Defendants, along with Reinert, are hereafter referred to as the "Federal Defendants".

## Jurisdiction and Venue

12. This First Amended Complaint raises claims for deliberate indifference pursuant

to 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Eighth and Fourteenth Amendments of the U.S. Constitution.

13. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

14. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). Venue is proper under § 1391(b)(1) because all Defendants are residents of the State of Iowa and at least one Defendant resides in this judicial district. Venue is proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Background

15. On January 7, 2019, Palmer provided information to U.S. agents that Justin Michael Buehler ("Buehler") regularly sold methamphetamine to other employees at Pries Manufacturing in Independence, Iowa. (*See* First Am. Complt. Ex. 1, at p. 4.)

16. In January of 2019, Palmer completed two controlled purchases of methamphetamine from Buehler, in assistance to the U.S. government:

   a. January 16: Buehler distributed 3.39 grams of a mixture of methamphetamine to Palmer in exchange for $210; and

   b. January 24: Buehler distributed 6.88 grams of actual (pure) methamphetamine to Palmer in exchange for $240.

(*See id.*)

17. In preparation for his prosecution at the Federal Courthouse for the Northern District of Iowa in Cedar Rapids, Iowa, the Federal Defendants decided to arrest and hold Buehler at the LCCC.

4

18. On the morning of May 27, 2022, without any warning or efforts to confirm Palmer's attendance at Buehler's trial, the U.S. Marshals executed a material witness warrant on Palmer at his home and took him into custody. Following a detention hearing, Palmer was directed to LCCC for holding until he testified at Buehler's trial.

19. On that same day, Buehler was to be transferred out of the LCCC, but prior to his transfer had a recorded phone conversation with an unknown woman:

> Unknown woman: "Why, why would they do that?"
>
> Buehler: "Well probably because, fucking, they picked up [Palmer] yesterday."
>
> Unknown woman: "So what's that got to do with anything? I don't understand."
>
> Buehler: "Yeah I don't either, we have no contact on each other because he's snitch'n on me, but regardless [unclear whether Buehler says "I" or "they"] got people in different pods here, you know what I mean."

(*See id.*, at pp. 4-5.)

20. Also on May 27, 2022, and prior to his transfer from the LCCC, Buehler spoke with fellow LCCC inmates Johnny Blahnik Church ("Church")[2] and Gregory Sills ("Sills"). Buehler told Church and Sills that Palmer had been arrested in Black Hawk County, Iowa, and would likely be housed in the LCCC. Buehler provided Palmer's name and description, telling Church, "[i]f they bring him here…" Following this comment, Church assured Buehler that he would take care of it. Buehler also made it known to the entire cell block in the LCCC that Palmer had cooperated with the government. Church told Sills that he intended to give Palmer a bloody nose and a black eye in order to make him appear "fucked up when he testified [against Buehler]." (*See id.* at p. 5.)

---

[2] By May 27, 2022, Church had already been convicted for the brutal stabbing death of Chris Bagley in 2018. Church subsequently received a 57-year sentence for Bagley's murder.

5

21.     Upon his arrival at LCCC on May 27, 2022, and during his intake, Palmer advised some or all Linn County Defendants that he was a material witness and wanted protective custody.

22.     Palmer was initially placed in a single cell, but an hour or two later was (inexplicably) moved to a general population pod.

23.     Notably, Palmer, who was merely detained as a material witness, was placed in the same general population pod as Church, a convicted and violent murderer, despite the Linn County Defendants' inmate segregation policies that provide: (a) "Inmates who have exhibited violent behavior <u>shall</u> be segregated if their behavior poses a threat to the safety of other inmates."; and (b) "Pretrial detainees <u>shall</u> be segregated from inmates who are not pretrial detainees, whenever possible." (*E.g.,* First Am. Complt. Ex. 2, LCCC's "Inmate's Rights Rules and Regulations", pp. 8-9, §§ 4(H)(3) and (4) (emphases added).)

24.     While in the general pod, Palmer's bunkmate told him that the inmates were waiting for a "snitch", and when Palmer saw Buehler's name on the phone sign-up he realized he was in Buehler's former bunk in the pod.

25.     With this additional information, Palmer again pleaded with some or all Linn County Defendants to place him in a single cell, but his pleas were ignored.

26.     For example, Palmer advised an unknown Linn County Defendant that he was in danger, explicitly stating, "They are going to kill me." To which the unknown Linn County Defendant responded, "You'll be okay," and proceeded to place Palmer back into the pod that also contained Church and Sills.

27.     Shortly after, still on May 27, 2022, Palmer was violently attacked by Church and

Sills. Church dragged Palmer from the restroom, throwing him against a table. Church then grabbed Palmer and punched him in the face several times, while Sills kicked him in the head. Church then hit Palmer over the head with a dinner tray two times and threw Palmer into a table again. (*See* First Am. Complt. Ex. 3, LCCC surveillance camera footage of 5/27/22 attack (as filed on 10/7/22 by U.S. as Ex. 1 to its Motion for Upward Variance in *U.S. v. Church* (NDIA Case No. 1:19-CR-00030-CJW-MAR-1).)

28. During the assault, Church and/or Sills told Palmer not to wear a wire, that Palmer was a "rat", and insinuated that Palmer would be assaulted again. (*See* First Am. Complt. Ex. 1, at p. 5.)

29. Following the attack and after regaining consciousness, Palmer alerted LCCC staff with an emergency call button.

30. Although the room that Palmer was assaulted in was monitored by live video surveillance by some or all the Linn County Defendants, none of the Linn County Defendants came to Palmer's aid during the attack. (*See id.*, at p. 16, LCCC "Inmate Incident Report" by Deputy Rawson ("As I was in the control center, I was checking each block to see if the inmates were ready to be locked down after eating there [sic] 1630 meal. I looked up at the monitor and noticed something odd happening in 4-V. I noticed one white male inmate on his hands and knees trying to get up by the door entering 4-V while a different white male was walking away from him. At this time Deputy Helms entered the control center and I advised him what I noticed [sic] The inmate was able to stand up and hit the block buzzer to talk to the 5th floor control center. I answered him and he replied 'Help, Help, Help!" [sic]….").)

31. Palmer was subsequently treated at Mercy Hospital and University of Iowa

Hospitals, where he was treated for extensive physical injuries, including facial trauma, an orbital fracture, a broken nose and teeth, and a fractured knee.

32. Following the assault, Palmer was segregated and then transferred to the Hardin County Jail.

33. Despite his injuries, Palmer still testified as a material witness at Buehler's criminal jury trial, which commenced on June 7, 2022 (less than two weeks after Palmer's attack), resulting in Buehler's conviction.[3]

34. Federal and state investigations were initiated as a result of the May 27, 2022, assault.

35. Gardner claims that the Linn County Defendants were not provided any classification information, no-contact instructions, or otherwise regarding Palmer from the Federal Defendants (ignoring that some or all the Linn County Defendants were at least informed (on multiple occasions) of the threats to Palmer's safety by Palmer himself).

36. In addition to Palmer's injuries that were treated immediately following the attack, Palmer has been diagnosed with post-traumatic stress disorder, anxiety, and depression, and he continues to have physical and mental health complications arising from the May 27, 2022, assault at the LCCC.

37. On September 21, 2022, this Court received Palmer's motion to proceed *in forma pauperis* (Doc. 1) and *pro se* civil rights complaint (Doc. 1-1).

---

[3] In sentencing Buehler to 30 years in prison, this Court granted the U.S. Government's motion for upward variance based, in part, on the 5/27/22 assault on Palmer. (*See* First Am. Complt. Ex. 1 (seeking upward variance); *see also U.S. v. Buehler* (NDIA Case No. 21-CR-2006-CJW-MAR), Doc. 155 (Minute Entry granting same) and Doc. 156 (Judgment sentencing Buehler to two 360-month terms of imprisonment to be served concurrently).)

38. On November 15, 2022, this Court filed its Initial Review Order (Doc. 2), granting Palmer's motion. Pursuant to the Order, the Clerk filed Palmer's Complaint (Doc. 3) on the same day.

39. On December 23, 2022, Palmer delivered a written grievance to LCCC Jail Administrator Major Matt Sandvick pursuant to LCCC rules. (*See* First Am. Complt. Ex. 2, at pp. 50-51, § 33 Inmate Grievance procedures; § 33(A) (requiring Jail Administrator be notified of inmate grievance in writing).)

40. On January 6, 2023, the LCCC responded: "The documents your [sic] forwarded to Captain Sandvick do not identify any relief that the LCCC staff can grant to Mr. Palmer."

41. On January 10, 2023, Palmer appealed the LCCC's response in writing to the Jail Administrator, pursuant to LCCC rules. (*See id.*, at p. 51, § 33(I) ("If the inmate disagrees with the response, he/she may then appeal to the Jail Administrator in writing.").) The LCCC Inmate Grievance rules do not require anything additional from Palmer after providing the Jail Administrator with this written appeal of the LCCC's response (*see id.*, at § 33, generally). Palmer has therefore exhausted his administrative remedies with the LCCC and the Linn County Defendants.

Count I
Deliberate Indifference v. the Linn County Defendants
42 U.S.C. § 1983

42. Palmer restates and incorporates all the above Paragraphs.

43. During all relevant times, the Linn County Defendants were acting in their official capacity as employees of the Linn County Sheriff's Office, the LCCC, and/or Linn County and were acting under color of state law.

44. The Linn County Defendants were deliberately indifferent to a substantial risk of harm to Palmer in various ways, including: (1) placing a convicted violent offender/murderer (i.e., Church, at least) in a general population pod, against LCCC guidelines governing the Linn County Defendants; (2) placing Palmer, a material witness and informant, in a pod with non-pretrial detainees, including Church, against LCCC guidelines governing the Linn County Defendants; (3) failing to require and/or obtain necessary information from federal officials, including the Federal Defendants, to properly classify Palmer while he was held at LCCC; (4) ignoring repeated notices from Palmer that he was merely a witness in a criminal trial, that the inmates in his pod were on the lookout for a "snitch", and that he was in danger, as well as multiple requests that he be placed in an individual cell; and (5) failing to adequately monitor and/or supervise the inmates to protect Palmer from violence by other inmates.

45. As a direct result of the Linn County Defendants' actions, Palmer was seriously injured, his rights were violated, and he suffered damages (including permanent and/or ongoing physical and mental damages).

WHEREFORE, Palmer requests the following relief against the Linn County Defendants:

A. Entry of judgment on this Count in favor of Palmer and against the Linn County Defendants;

B. An award of damages, including compensatory, punitive damages, exemplary damages, and all other damages allowed by law;

C. An award of attorneys' fees and costs, as authorized by law; and

D. Any further relief the Court deems just.

Count II
Deliberate Indifference v. the Federal Defendants
*Bivens*

46. Palmer restates and incorporates all the above Paragraphs.

47. During all relevant times, the Federal Defendants were acting in their official capacity as employees of the United States, the U.S. Department of Justice, the U.S. Attorney's Office for the Northern District of Iowa, and/or the U.S. Marshal's Office and were acting under color of federal law.

48. The Federal Defendants were deliberately indifferent to a substantial risk of harm to Palmer in various ways, including: (1) failing to provide necessary information to Linn County Defendants and their personnel to properly classify and protect Palmer he was held at LCCC; and (2) failing to protect Palmer, their informant and material witness.

49. As a direct result of the Federal Defendants actions, Palmer was seriously injured, his rights were violated, and he suffered damages (including permanent and/or ongoing physical and mental damages).

WHEREFORE, Palmer requests the following relief against the Federal Defendants:

A. Entry of judgment on this Count in favor of Palmer and against the Federal Defendants;

B. An award of damages, including compensatory, punitive damages, exemplary damages, and all other damages allowed by law;

C. An award of attorneys' fees and costs, as authorized by law; and

D. Any further relief the Court deems just.

Dated: January 24, 2023

*/s/ Jeremiah D. Junker*
TIMOTHY J. HILL (#AT0003534)
   Direct Dial: (319) 861-8758
   Email: thill@bradleyriley.com
JEREMIAH D. JUNKER (#AT0013077)
   Direct Dial: (319) 861-8745
   Email: jjunker@bradleyriley.com
   of

BRADLEY & RILEY PC  
2007 First Avenue SE  
P.O. Box 2804  
Cedar Rapids, IA 52406-2804  
Phone: (319) 363-0101  
Fax:    (319) 363-9824  
*ATTORNEYS FOR PLAINTIFF*  
*ETHAN LEE PALMER*

Copy to:

Elena Wolford  
Assistant Linn County Attorney  
935 – 2nd Street SW  
Cedar Rapids, IA 52404-2100  
Email: elena.wolford@linncountyiowa.gov  
*ATTORNEYS FOR DEFENDANTS*  
*BRIAN GARDNER AND PETE WILSON*

Evelyn S. Yarborough  
NC Bar No. 56629  
Trial Attorney, United States Department of Justice Torts Branch, Civil Division  
P.O. Box 7146  
Washington, D.C. 20044-7146  
Tel:    (202) 307-2106  
Fax:    (202) 616-4314  
Email: evelyn.s.yarborough@usdoj.gov.  
*ATTORNEYS FOR DEFENDANT*  
*PATRICK REINERT*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon the persons listed on this document at the addresses indicated by CM/ECF electronic notification or by enclosing the same in an envelope with postage fully paid and by depositing said envelope in a United States Post Office depository this 24th day of January, 2023. I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Stacey M. Snead*