IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CR-2006-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| JUSTIN MICHAEL BUEHLER, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

In anticipation of the sentencing hearing set for January 9, 2023, the government submits the following sentencing memorandum.

**Sentencing Issues:**

In the final Presentence Investigation Report ("PSR"), filed on September 29, 2022, defendant raises the following issues that must be resolved at sentencing: (1) defendant objects and denies assaulting or engaging in sexual misconduct against C.S., A.M.R., A.R., and K.S.; (2) identification of C.S., J.G., A.M.R., A.R., and K.S. [1] as victims; (3) the proposed special condition that defendant be restricted from contacting C.S., J.G., A.M.R., A.R., and K.S.; (4) the proposed special condition that defendant participate in a mental health evaluation, which may include an evaluation for sex offender treatment; and (5) that an upward departure may be warranted. (R. Doc. 143, at 7, 13-24, 102, 104, and 119).

---

[1] The government has disclosed all documentation, in its possession, related to C.S., J.G., A.M.R., A.R., and K.S. to Defense Counsel Andrea Jaeger. Additionally, C.S. and J.G. testified at trial.

For the reasons set forth in the attached brief, the government asserts that defendant's objections should be overruled.  In addition, the government moves for an upward departure under USSG §5K2.2 for the assault committed against C.S. and §2D.1.1, Comment n.22 (B), for defendant's sexual assaults of A.M.R. and A.R. In the alternative, the government moves for an upward variance based on the §3553(a) factors.

If the defendant submits a motion for downward variance, the government will respond either in writing or orally at the sentencing hearing.

**Government Witnesses:**

The government intends to call A.M.R. and A.R. as witnesses.

**Government Exhibits:**

The government has already submitted victim impact statements for A.R. and K.S.  In addition, the governments intends to submit the following exhibits:

1.  Government's Exhibit 1 - Report from Jail Assault of C.S.

2.  Government's Exhibit 2 - Pictures after Assault of C.S.

Respectfully submitted,

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY:  */s/ RAL*

TIMOTHY T. DUAX
United States Attorney

By, */s/ Jason Dorval Norwood*

JASON DORVAL NORWOOD
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
319-363-6333
319-363-1990 (Fax)
Jason.Norwood@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CR-2006-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| JUSTIN MICHAEL BUEHLER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING BRIEF AND MOTION FOR
UPWARD DEPARTURE AND/OR VARIANCE**

The government submits the following brief in support of its sentencing

memorandum and motion for upward departure.

## TABLE OF CONTENTS

I. RELEVANT FACTUAL BACKGROUND ................................................................ 2

    A. Defendant's Offense Conduct ..................................................................... 2

    B. Assault of C.S. ................................................................................................ 2

    C. Sexual Assaults of A.M.R. and A.R. ......................................................... 4

        1. Sexual Assault of A.M.R. ....................................................................... 4

        2. Sexual Assault of A.R. ........................................................................... 5

    D. Defendant's Criminal History ................................................................... 6

II. ANALYSIS ............................................................................................................... 7

    A. Upward Departure—Assault of C.S. ......................................................... 7

    B. Upward Departure—Sexual Assaults of A.M.R. and A.R. .................... 8

    C. Alternatively, if the Court Does Not Depart Upward, the Court
       Should Vary Upward ................................................................................... 11

1. Nature and Circumstances of the Offense .......................................12

2. History and Characteristics of the Defendant...............................12

3. The Need to Protect the Public from Future Crimes of the Defendant.............................................................................12

III. CONCLUSION ..............................................................................12

## I. RELEVANT FACTUAL BACKGROUND

### A. Defendant's Offense Conduct

On January 7, 2019, an individual that later became a Confidential Source ("C.S."), provided information to agents regarding C.S.'s contact with defendant. (R. Doc. 143, at ¶7). C.S. stated that defendant regularly sold methamphetamine to other employees at Pries Manufacturing in Independence, Iowa. (R. Doc. 143, at ¶7). In January 2019, C.S. completed two controlled purchases of methamphetamine from the defendant. (R. Doc. 143, at ¶¶9 and 11).

On January 16, 2019, defendant distributed 3.39 grams of a mixture of methamphetamine to C.S. in exchange for $210. (R. Doc. 143, at ¶9). On January 24, 2019, defendant distributed 6.88 grams of actual (pure) methamphetamine to C.S. is exchange for $240. (R. Doc. 143, at ¶ 11).

### B. Assault of C.S.

On May 27, 2022, before defendant was transferred from the Linn County Correctional Center ("LCCC"), defendant had the following recorded conversation with an unknown woman:

Unknown woman: "Why, why would they do that?"

Defendant: "Well probably because, fucking, they picked up Ethan yesterday."

Unknown woman: "So what's that got to do with anything? I don't understand."

Defendant: "Yeah I don't either, we have no contact on each other because he's snitch'n on me, but regardless [unclear whether defendant says "I" or "they"] got people in different pods here, you know what I mean."

Unknown woman: "Yeah."

Defendant: "So yeah, I have no idea, but I don't know, my guess is that it's probably going to be like Iowa County in Marengo."

(R. Doc. 143, at ¶21).

On the same day, before his departure from the LCCC, defendant spoke to Johnny Blahnik Church in the presence of Gregory Sills. (R. Doc. 143, at ¶22). During the conversation, defendant told Church that C.S. had been arrested in Black Hawk County, Iowa, and would likely be housed in the LCCC. (R. Doc. 143, at ¶22). Defendant provided C.S.'s name, description, and told Church, "[i]f they bring him here…" (R. Doc. 143, at ¶22). Following that comment, Church assured defendant that he would take care of it. (R. Doc. 143, at ¶22). Defendant made it known to the entire cell block that C.S. cooperated with the government. (R. Doc. 143, at ¶22). Church told Sills that he intended to give C.S. a bloody nose and a black eye in order to make him appear "fucked up when he testified [against the defendant]." (R. Doc. 143, at ¶22).

Later that day, Church and Sills assaulted C.S. (R. Doc. 143, at ¶23). During the assault, C.S. was told not to wear a wire, that C.S. was a "rat," followed by an insinuation that he would be assaulted again. (R. Doc. 143, at ¶23).

The video footage showed Church throw C.S. in the dayroom against a small table. (Government's Exhibit 1). Church then grabbed C.S. and punched C.S. in

the face several times while Sills kicked C.S. in the head. (Government's Exhibit 1). Church then took a dinner tray and hit C.S. in the head two times and proceeded to throw C.S. into the small table. (Government's Exhibit 1). At that point, Church grabbed C.S. and pushed C.S. over to the door entrance. (Government's Exhibit 1). Due to C.S.'s injuries, he was transported to the hospital and treated for his injuries. (Government's Exhibits 1 and 2).

At trial, the Court found there was a conspiracy to assault C.S., defendant was a member of the conspiracy, and the statements made by Church and Sills were in furtherance of the conspiracy. (R. Doc. 143, at ¶22).

### C. Sexual Assaults of A.M.R. and A.R.

1. Sexual Assault of A.M.R.

Discovery materials show that A.M.R. met defendant around Halloween in 2020 and was 21 years' old at the time. (R. Doc. 143, at ¶17). At approximately 4:00 a.m., defendant was riding his scooter when he spotted A.M.R. and invited her to his home. (R. Doc. 143, at ¶17). After they arrived at defendant's home, defendant offered A.M.R. a "drink." (R. Doc. 143, at ¶17). A.M.R. agreed to allow defendant to inject A.M.R. with methamphetamine and then felt "spun out," like she had taken more methamphetamine than she had ever consumed at one time. (R. Doc. 143, at ¶17). Defendant then attempted anal sex with A.M.R. for hours. (R. Doc. 143, at ¶17). During the sexual assault, defendant called A.M.R. names and when A.M.R. attempted to push defendant's hand a way from A.M.R.'s body, defendant struck A.M.R.'s hand and told her to stop. (R. Doc. 143, at ¶17). A.M.R.

said that this same manner of sexual contact happened for days, and defendant forced her to lie still during each attack. (R. Doc. 143, at ¶¶17 and 18).

During this time, defendant provided A.M.R. with methamphetamine to ensure that A.M.R. would stay high. (R. Doc. 143, at ¶18). On some occasions, A.M.R. felt so high that she had difficulty trying to operate a light switch. (R. Doc. 143, at ¶18). Although A.M.R. had used methamphetamine in the past, A.M.R. had never felt the level of impairment as A.M.R. experienced with defendant. (R. Doc. 143, at ¶18). A.M.R. experienced pain sitting down for multiple days and some bleeding from the area. (R. Doc. 143, at ¶17). Defendant also pinned down A.M.R.'s arms with his legs and attempted to insert his penis into her mouth. (R. Doc. 143, at ¶18).

### 2. Sexual Assault of A.R.

In 2014, A.R. met defendant while working at Kruse Farms. (R. Doc. 143, at ¶14). Between the winter of 2019 and 2020, A.R. began staying at defendant's house in Oelwein, Iowa. (R. Doc. 143, at ¶14). During one of the stays, A.R. agreed to let defendant inject A.R. with methamphetamine; however, A.R. stated the substance was not consistent with "normal" methamphetamine. (R. Doc. 143, at ¶15). A.R.'s perception became foggy and A.R. was unsure if A.R. had fallen asleep or was passed out. (R. Doc. 143, at ¶15). When A.R. woke up, A.R. was naked and alone in a cold garage attached to defendant's residence. (R. Doc. 143, at ¶15).

During one of the stays, defendant injected A.R. with methamphetamine, which caused A.R. to lose the ability to talk and control her body. (R. Doc. 143,

at ¶16).  As A.R. was going in and out of consciousness, defendant spent "a couple of hours feeling [A.R.] up" and attempted to insert his penis into A.R.'s vagina and rectum.  (R. Doc. 143, at ¶16).  A.R. did not consent to sexual intercourse. (R. Doc. 143, at ¶16).  Due to erectile dysfunction, defendant was not able to penetrate A.R.  (R. Doc. 143, at ¶16).

### D.  Defendant's Criminal History

Defendant has a significant criminal history, which started at age 17. (R. Doc. 143, at ¶38).  Defendant has a subtotal criminal history score of 15. (R. Doc. 143, at ¶52).

Defendant's criminal history includes a conviction for Assault Domestic Abuse Causing Serious Injury.  (R. Doc. 143, at ¶43).  The underlying facts state that defendant fractured the victim's ribs, punched the victim in the left eye, which resulted in permanent disfigurement, and bit her right finger.  (R. Doc. 143, at ¶43). In a second incident, the defendant punched the victim, burned the victim's left hand with a cigarette lighter, dragged her across the floor, and kicked her in the face.  (R. Doc. 143, at ¶43).  Defendant's violent conduct continued in the instant case.

Defendant also has possessed illegal controlled substances with the intent to deliver.  In 2006, defendant received a conviction for Possession of Methamphetamine with Intent to Deliver, Possession of Marijuana with Intent to Deliver, and Drug Tax Stamp Violation.  (R. Doc. 143, at ¶43).  Defendant was sentenced to 10 years' imprisonment for the methamphetamine charge.

(R. Doc. 143, at ¶47). Defendant's record shows several convictions involving public intoxication and driving while intoxicated. (R. Doc. 143, at ¶¶49-52).

Based on his criminal history involving certain predicate offenses, defendant is a career offender under USSG §4B1.1(b). Defendant does not object to this classification or the predicate offenses.

## II. ANALYSIS

### A. Upward Departure—Assault of C.S.

Under USSG §5K2.2, an upward departure may be warranted "[i]f significant physical injury resulted." *Id.*

> The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated.

USSG §5K2.2.

The advisory guidelines do not define the term "significant physical injury." However, the advisory guidelines define two similar terms. The Guidelines define "serious bodily injury" as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG §1B1.1(1)(M). The Guidelines also define "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG §1B1.1(1)(B).

The government must prove, by a preponderance of evidence, that the facts warrant this upward departure. *United States v. Mosseau*, 517 F.3d 1044, 1049 (8th Cir. 2008).

Here, the evidence at trial, established that defendant's role in a conspiracy with Church and Sills resulted in the brutal assault of C.S. in the LCCC. (R. Doc. 143, at ¶22). C.S. was punched in the face several times, kicked in the head, thrown into a small table, and pushed over a door entrance. (Government's Exhibit 1). As a result of his injuries, C.S. was hospitalized. (Government's Exhibits 1 and 2). It is conceivable that the Court could find that C.S.'s injuries qualify as both "serious bodily injury" and "bodily injury" under the Guidelines.

The government notes that, as currently calculated in the final Presentence Investigation Report ("PSR"), defendant's advisory guideline range is 262-327 months' imprisonment. If the Court finds that it is the applicable advisory guideline range and does not vary upward, the government asks the Court to consider an upward variance as discussed below.

### B. Upward Departure—Sexual Assaults of A.M.R. and A.R.

Under USSG §2D1.1(e)(1), if a defendant, "committed, or attempt to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an adjustment under §3A1.1(b)(1) shall apply." Under USSG §3A1.1(b)(1), "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim," an enhancement to a defendant's base offense level would apply.

In applying USSG §2D1.1(e)(1), "if the defendant committed a sexual offense against more than one individual, an upward departure would be warranted." USSG §2D1.1(e)(1), Comment 22(B). The Guidelines define "sexual offense" as a "'sexual act' or 'sexual contact' as those terms are defined in 18 U.S.C. §2246(2) and (3), respectively." USSG §2D1.1(e)(1), Comment 22(A).

Under 18 U.S.C. §2246, "sexual act" and "sexual contact" are defined as follows:

> (2) the term "sexual act" means—
> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;
>
> (3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. §2246(2) and (3).

A "vulnerable victim" means "a person (A) who is victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." USSG §3A1.1, Application Note 2.

In *United States v. Plenty*, the Eighth Circuit Court of Appeals affirmed the district court's finding that the "vulnerable victim" enhancement applied because the victim was sleeping at the time of the instant offense. *United States v. Plenty*, 335 F.3d 732 (8th Cir. 2003). In the case, the government relied on *United States v. Wetchie* to support, which stated:

> As the district court found, the victim's being asleep "diminished [her] ability to resist the Defendant or cry out, [rendering her] essentially unable under any circumstances to resist his physical advance, unable to express any objection, unable to cry out, unable to do really anything until after the act was already underway or completed.

*United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000).

The Court found that the unusual vulnerability addressed *Wetchie* was also present in the case. *Plenty* at 735. The Court further stated that the victim was asleep, did not have the ability to run away, move the location of the assault away form her children, or to fight back. *Id*.

Here, the government intends to prove, at sentencing, that defendant sexually assaulted both A.R.M. and A.R. The governments intends to present the testimony of A.M.R. and A.R. The government anticipates the testimony and A.M.R. and A.R. will show that defendant injected both individuals with methamphetamine and attempted sexual intercourse with them by force and without consent. The evidence will show that during the sexual assaults, A.M.R. was "spun out," kept high by the defendant, was physically incapacitated, and physically restrained by defendant. The evidence will also show that during the sexual assault, A.R. was going in and out of consciousness, lost the ability to talk or

control A.R.'s body, and was incapacitated. Consequently, both A.M.R. and A.R. were vulnerable victims.

The government notes that, as currently calculated in the PSR, defendant's advisory guideline range is 262-327 months' imprisonment. If the Court finds that it is the applicable advisory guideline range and does not vary upward, the government asks the Court to consider an upward variance as discussed below.

## C. Alternatively, if the Court Does Not Depart Upward, the Court Should Vary Upward

Pursuant to 18 U.S.C. § 3553, the Court should, after considering the "nature and circumstances of the offense and characteristics of the defendant," impose a sentence that is:

> sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*See also United States v. Mangum*, 625 F.3d 466, 470 (8th Cir. 2010) ("Where a district court in imposing a sentence makes an individualized assessment based on the facts presented, addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable.").

Should the Court decide against an upward departure , an upward variance is appropriate under § 3553(a). In this case, at least three of the § 3553(a) factors weigh heavily in favor of an above-guidelines sentence.

1.   Nature and Circumstances of the Offense

The nature and circumstance of the offense are very troubling.  Defendant engaged in the dealing of methamphetamine, conspired in the brutal assault of a government witness, and sexually assaulted multiple individuals.

2.   History and Characteristics of the Defendant

Defendant's criminal history is consistent with his actions taken in the instant offense.  Defendant continues to engage in criminal activity involving physical abuse, drug dealing, and the assault of women.

3.   The Need to Protect the Public from Future Crimes of the Defendant

Defendant poses a significant danger to the community for several reasons. Defendant has shown that he has access to illegal controlled substances and is willing to distribute them at work and from his residence.  Defendant has also shown a violent, physically and sexually abusive history with multiple individuals, preying upon individuals for his sexual gratification.  In addition, defendant is willing to intimidate individuals to obstruct the criminal justice system for his own gain.

All of the factors, collectively and individually, warrant an upward variance.

## III.  CONCLUSION

The government respectfully requests the Court depart upwardly and/or vary upwardly pursuant USSG §5K2.2 for the assault committed against C.S. and §2D.1.1, comment n.22 (B), for defendant's sexual assaults of A.M.R. and A.R. and sentence defendant to a term of imprisonment of 340 months.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ RAL*

By, */s/ Jason Dorval Norwood*

JASON DORVAL NORWOOD
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
319-363-6333
319-363-1990 (Fax)
Jason.Norwood@usdoj.gov

Government
Exhibit
1
Case
21-CR-2006-CJW
Sentencing

## LINN COUNTY CORRECTIONAL CENTER
## INMATE INCIDENT REPORT

DATE: **05/27/22**       TIME: **1650**       LOCATION: **4V**

INMATE: **Sills, Gregory Richard**

RACE: **W** SEX:   **M** DOB: ▮▮▮ **1973**       CID: **502369**

CLASSIFICATION: **HD USMS**       CELL: **4B-08**

REPORTING OFFICER AS WITNESS #1:   **Deputy Rawson 57-66**

WITNESS #2: **Deputy Helms 57-32**       WITNESS #3:   **Sergeant McElmeel 57-194**

WITNESS #4: **Sergeant Hauskins 57-20**       WITNESS #5:

On the above date and time, I, Deputy Rawson 57-66, was assigned as the 4th floor deputy in the Linn County Correctional Center on the 1600-2400 shift. At approximately 1650 hours, I was assisting Deputy Helms in the 5th floor control center. As I was in the control center, I was checking each block to see if the inmates were ready to be locked down after eating there 1630 meal. I looked up at the monitor and noticed something odd happening in 4-V. I noticed one white male inmate on his hands and knees trying to get up by the door entering 4-V while a different white male was walking away from him. At this time Deputy Helms entered the control center and I advised him what I noticed The inmate was able to stand up and hit the block buzzer to talk to the 5th floor control center. I answered him and he replied "Help, Help, Help!" so Deputy Helms called out possible medical in block 4-V. Once Deputy Helms entered the block and pulled the injured inmate out, he advised 1st floor to call an ambulance. The booking deputies along with Sergeant McElmeel 57-194 arrived on 4th floor for assistance. Sergeant Hauskins 57-20 reviewed video to see who was involved in the fight. The inmate that was injured identified as         C.S.       (DOB ▮▮▮ 1974). Inmate    C.S.    was escorted out by an ambulance and taken to the nearest hospital. Sergeant Hauskins was able to identify two white males that were involved in the fight by camera footage and they were Church, Johnny Blahnik (DOB ▮▮▮ 1987) and Sills, Gregory Richard (DOB ▮▮▮ 1973). The booking deputies along with Sergeant McElmeel handcuffed inmate Church and inmate Sills. Inmate Church was placed in 4A-08 and Inmate Sills was placed in 4B-08.

As 4-V was getting cleaned up and property was gathered, I was able to review video of the fight in the Sergeant's office. Watching the footage from the beginning at 1652 hrs. , inmate    C.S.    was in the bathroom when inmate Church and inmate Sills walked in there. On video you can see inmate Church bring his right arm back. From there on I was not able to see what fully happened in the bathroom but then a few seconds later inmate Church throws inmate    C.S.    into the dayroom against the small table. Inmate Church grabs Inmate    C.S.    and starts punching him in the face several times while inmate Sills was kicking and kneeing Inmate    C.S.    . inmate Church held inmate    C.S.    in place allowing inmate Sills the ability to kick him in the head. inmate    C.S.    was unable to get up and rolls over by the telephone hanging on the wall next to the bathroom. Meanwhile the dinner trays were stacked on a stool underneath the phone. At 1653 inmate Church grabs a dinner tray and hits inmate    C.S.    in the back of the head two times. inmate Church then throws inmate    C.S.    into the small table causing him to hit his head. inmate Church grabs inmate    C.S.    and pushes him over towards the 4-V door entrance. At 1654 inmate Church walks away and inmate    C.S.    struggled to get up from the ground. Seconds later inmate    C.S.    was able to stand up but could not find the buzzer for the control center. Inmate    C.S.    found the button and responded with the words, "Help, Help, Help." At 1655 hrs.

COPIES:   ☐ SHERIFF       ☐ ADMINISTRATOR   ☐ ASST. ADMINISTRATOR
        ☐ DISCIPLINARY FILE       ☐ INMATE   ☐ INMATE FILE

Deputy Helms responds to the block and provided medical attention to inmate  C.S.  until the ambulance arrived.

Due to Inmate Sills actions I am charging him with the following Linn County Correctional Center violations:

-        00.2 Assaulting another person
-        00.40 Conduct which disrupts or interferes with the security, tranquility, or orderly running of this institution.

END OF REPORT

STAFF SIGNATURE _Plan 57-66_     APPROVED BY _Sgt____ Ssns_

COPIES:    ☐ SHERIFF         ☐ ADMINISTRATOR    ☐ ASST. ADMINISTRATOR
           ☐ DISCIPLINARY FILE     ☐ INMATE    ☐ INMATE FILE

# LINN COUNTY CORRECTIONAL CENTER
## SUPPLEMENTAL REPORT

DATE: 05/27/2022
REPORT BY: Deputy Helms 57-32
NARRATIVE:

On 05/27/2022, I Deputy Helms 57-32 was assigned as the 5th floor deputy for the 1600-0000 hours shift at the Linn County Correctional Center. At approximately 1654 hours I came back into the control center where Deputy Rawson 57-66 was. Deputy Rawson observed some out of the normal movement from 4V block. At this time the 4V buzzer to the 5th floor control center went off. The inmate who was later identified as C.S. (DOB: ▮▮▮▮1974) stated "help me, help me." I responded to 4V due to the fact I thought that inmate C.S. may be having a medical episode.

I opened the door to 4V block and observed inmate C.S. standing at the door with significant facial trauma. The inmate had visible bleeding from his nose and mouth along with significant bruising and swelling to both orbital sockets which were swollen shut. The inmate took one step out of the door and fell to the ground landing supine. As inmate C.S. was stepping out of the block I was able to observe several significant blood spots along the inner side of the door and floor of the entrance to the block. At this time I radioed "medical 4V and advised a 10-52 (ambulance) was needed." Several other deputies arrived at this time. The injuries noted upon initial appearance appeared to have been inflicted by another individual or individuals. The injuries were not consistent with self-inflicted.

Inmate C.S. was awake, alert, and mildly disoriented complaining of fully body pain. Inmate C.S. was able to tell me his full name. Inmate C.S. s airway was open and intact with blood spiting from his mouth. Inmate C.S. s breathing was increased and labored and lung sounds were clear. Inmate C.S. had a strong radial pulse palpated. The blood on inmate C.S. s face was cleared and there were no visible signs of active bleeding to control. Due to inmate C.S. s complaints and mechanism of injury I directed Deputy McClain 57-74 to hold manual cervical spine alignment until a C-Collar could be applied. Inmate C.S. s jail issued shirt was cut off to expose any further injuries. Inmate C.S. s right bicep was noted to have significant swelling and bruising. No further injuries noted. The extent of the observed injuries to inmate C.S. were facial. Upon examination of inmate C.S. s mouth there were no noted missing teeth.

Linn County Correctional Center nursing arrived at this time and were able to provide a C-Collar that was applied without complications. While applying the C-Collar to inmate C.S. , I additionally noted blood in both the inmates ears. It was unsure if this was from the extensive nose bleed or other facial injuries or if inmate C.S. was experiencing an internal head injury causing the bleeding. There was no bruising noted behind inmate C.S. s ears at this time. Nursing staff obtained vitals of inmate C.S. and were reported, blood pressure 160/100, heart rate 125 strong and regular, oxygen saturation 98%, and respiratory rate 18 and labored. There was no noted change in inmate C.S. s status upon reassessments.

COPIES: ☐ SHERIFF ☐ ADMINISTRATOR ☐ ASST. ADMINISTRATOR
☐ DISCIPLINARY FILE ☐ INMATE ☐ INMATE FILE

First Am. Complt. Ex. 1, p. 19

In accordance with Linn County Rescue 57 medical protocols I started 1 20G IV in the inmates left AC. 1000ml normal saline was infused. Area Ambulance arrived at this time and patient was rolled onto a blanket and moved to Area Ambulance cot where he was secured for transport. Area Ambulance requested no further medical assistance and transported the patient to Mercy Hospital for further evaluation.

This ends my involvement with inmate    C.S.   . I stayed in 4V block with other deputies cleaning the blood from the floor and walls.

....END OF REPORT

STAFF SIGNATURE: _____    APPROVED BY: _____

# LINN COUNTY CORRECTIONAL CENTER
## SUPERVISOR'S REPORT

**DATE: 05-10-22**
**REPORT BY: 57-20 Sgt. Hauskins**

On 05/27/22, I was the shift supervisor in the Linn County Correctional Center from 0830 to 1830 hours. At approximately 1652 hours, a possible medical was called out in 4V block. Staff advised they were not sure what was going on, however an inmate had hit the intercom and was saying "help, help, help". Myself and 194 Sgt. McElmeel responded to the double elevator and began making our way to 4ᵗʰ floor with other staff. While on the way to 4ᵗʰ floor, Deputy 57-32 Helms had made contact with the inmate and advised he had been assaulted and likely needed an ambulance due to the extent of his injuries. I advised 194 Sgt. McElmeel that I would go down to the office and begin looking at video, while he handled the scene.

On video, at approximately 1652 hours,     C.S.     (W/M    74) can be seen cleaning off his dinner tray and then entering the bathroom area. A few seconds later inmates Johnny Blahnik Church (W/M    -87) and Gregory Richard Sills (W/M    -73) both enter the bathroom area and begin to assault inmate   C.S.  . They drag inmate   C.S.   out into the day area and continue to punch and kick him. This continues for over a minute, causing several injuries to   C.S.   s head and face, resulting in a large amount of blood being visible on camera. During the assault, Church can be seen holding   C.S.   in place at one point while Sills repeatedly kicks   C.S.   in the face. Several more punches are delivered to   C.S.  , and Church eventually grabs onto a metal meal tray and begins striking   C.S.   in the head and face repeatedly. Church then grabs onto to   C.S.   from behind and appears to be saying something to him. He then throws   C.S.   against the door to the cell block and walks away.   C.S.   then activates the emergency intercom button and requests help and remains by the door to the cell block until staff arrive and remove him from the cell block. Inmate   C.S.   was transported by Area Ambulance to Mercy Medical Center at approximately 1710 hours. Both inmate Church and inmate Sills were handcuffed and moved to isolation without incident.

**END OF REPORT**

**OFFICER'S SIGNATURE:** _____  **APPROVED BY:** _____

COPIES:   ☐ SHERIFF          ☐ ADMINISTRATOR          ☐ ASST. ADMINISTRATOR
          ☐ DISCIPLINARY FILE     ☐ INMATE     ☐ INMATE FILE

Supervisor's Report                LCCC                      Page 1 of 1
                                Revised 4/2009

# LINN COUNTY CORRECTIONAL CENTER
## SUPERVISOR'S REPORT

**DATE: 5/27/22**
**REPORT BY: 194 Sgt. McElmeel**

On 05/27/22 at 1655 hours, I was working as the supervisor from 0830 to 2030 hours in the Linn County Jail. I was called to 4th floor V block in reference to a medical event. After reviewing video footage, an inmate identified as        C.S.          74 was observed going into the bathroom area at 1651 hours. Shortly after at 1652 hours, 2 inmates identified as Sills, Gregory Richard      73 and Church, Johnny Blahnik      87 enter the bathroom also. Church can immediately be seen throwing a punch at   C.S.  . Church forces   C.S.   from the bathroom area into the dayroom as Sills kicks at   C.S.  . Both inmates are observed throwing closed fist punches at   C.S.  's face in addition to kicks. Church can be observed forcing knee strikes to the head of   C.S.  . Sills is observed stomping on the head of   C.S.   as he is attempting to defend himself from the continuous assault. Church can be observed holding   C.S.   as Sills kicks   C.S.   to the head multiple times. Church drags   C.S.   towards the sitting stool by the phone and grabs an empty metal tray. Church is then observed to strike   C.S.   multiple times with the metal tray. Church is observed to be saying something to   C.S.   as   C.S.   is covering his head. Church pushes   C.S.   away and walks away. Area Ambulance was called to transfer   C.S.   to Mercy to be treated. Prior to the arrival of Area Ambulance,   C.S.   was treated by assisting staff and jail nurses.   C.S.   was being assessed to be transferred to the UI Hospitals and Clinics to be further treated.

A video was saved as to the actions of Church and Sills.

**END OF REPORT**

OFFICER'S SIGNATURE: _____ APPROVED BY: _____

COPIES: ☐ SHERIFF    ☐ ADMINISTRATOR    ☐ ASST. ADMINISTRATOR
        ☐ DISCIPLINARY FILE    ☐ INMATE    ☐ INMATE FILE

# LINN COUNTY CORRECTIONAL CENTER
## INMATE INCIDENT REPORT

DATE: **05/27/22**    TIME: **1650**    LOCATION: **4V**
INMATE: **Church, Johnny Blahnik**    CID: **3087991**
RACE: **W** SEX: **M** DOB:    **1987**
CLASSIFICATION: **HD USMS**    CELL: **4A-08**
REPORTING OFFICER AS WITNESS #1:    **Deputy Rawson 57-66**
WITNESS #2: **Deputy Helms 57-32**    WITNESS #3:   **Sergeant McElmeel 57-194**
WITNESS #4: **Sergeant Hauskins 57-20**    WITNESS #5:

      On the above date and time, I, Deputy Rawson 57-66, was assigned as the 4th floor deputy in the Linn County Correctional Center on the 1600-2400 shift. At approximately 1650 hours, I was assisting Deputy Helms in the 5th floor control center. As I was in the control center, I was checking each block to see if the inmates were ready to be locked down after eating there 1630 meal. I looked up at the monitor and noticed something odd happening in 4-V. I noticed one white male inmate on his hands and knees trying to get up by the door entering 4-V while a different white male was walking away from him. At this time Deputy Helms entered the control center and I advised him what I noticed The inmate was able to stand up and hit the block buzzer to talk to the 5th floor control center. I answered him and he replied "Help, Help, Help!" so Deputy Helms called out possible medical in block 4-V. Once Deputy Helms entered the block and pulled the injured inmate out, he advised 1st floor to call an ambulance. The booking deputies along with Sergeant McElmeel 57-194 arrived on 4th floor for assistance. Sergeant Hauskins 57-20 reviewed video to see who was involved in the fight. The inmate that was injured identified as C.S. (DOB   1974). Inmate C.S. was escorted out by an ambulance and taken to the nearest hospital. Sergeant Hauskins was able to identify two white males that were involved in the fight by camera footage and they were Church, Johnny Blahnik (DOB   1987) and Sills, Gregory Richard (DOB   1973). The booking deputies along with Sergeant McElmeel handcuffed inmate Church and inmate Sills. Inmate Church was placed in 4A-08 and Inmate Sills was placed in 4B-08.

      As 4-V was getting cleaned up and property was gathered, I was able to review video of the fight in the Sergeant's office. Watching the footage from the beginning at 1652 hrs. , inmate C.S. was in the bathroom when inmate Church and inmate Sills walked in there. On video you can see inmate Church bring his right arm back. From there on I was not able to see what fully happened in the bathroom but then a few seconds later inmate Church throws inmate C.S. into the dayroom against the small table. Inmate Church grabs Inmate C.S. and starts punching him in the face several times while inmate Sills was kicking and kneeing Inmate C.S. . inmate Church held inmate C.S. in place allowing inmate Sills the ability to kick him in the head. inmate C.S. was unable to get up and rolls over by the telephone hanging on the wall next to the bathroom. Meanwhile the dinner trays were stacked on a stool underneath the phone. At 1653 inmate Church grabs a dinner tray and hits inmate C.S. in the back of the head two times. inmate Church then throws inmate C.S. into the small table causing him to hit his head. inmate Church grabs inmate C.S. and pushes him over towards the 4-V door entrance. At 1654 inmate Church walks away and inmate C.S. struggled to get up from the ground. Seconds later inmate C.S. was able to stand up but could not find the buzzer for the control center. Inmate C.S.

COPIES:  ☐ SHERIFF  ☐ ADMINISTRATOR  ☐ ASST. ADMINISTRATOR
          ☐ DISCIPLINARY FILE  ☐ INMATE  ☐ INMATE FILE

found the button and responded with the words, "Help, Help, Help." At 1655 hrs. Deputy Helms responds to the block and provided medical attention to inmate    C.S.    until the ambulance arrived.

Due to Inmate Church actions I am charging him with the following Linn County Correctional Center violations:

- 00.2 Assaulting another person
- 00.40 Conduct which disrupts or interferes with the security, tranquility, or orderly running of this institution.


END OF REPORT


STAFF SIGNATURE _Ram 57-66_ APPROVED BY _St. 46 57-122_

COPIES:    ☐ SHERIFF         ☐ ADMINISTRATOR   ☐ ASST. ADMINISTRATOR
                 ☐ DISCIPLINARY FILE    ☐ INMATE      ☐ INMATE FILE

First Am. Complt. Ex. 1, p. 24

# LINN COUNTY CORRECTIONAL CENTER
## SUPPLEMENTAL REPORT

DATE: 05/27/2022
REPORT BY: Deputy Helms 57-32
**NARRATIVE:**

On 05/27/2022, I Deputy Helms 57-32 was assigned as the 5th floor deputy for the 1600-0000 hours shift at the Linn County Correctional Center. At approximately 1654 hours I came back into the control center where Deputy Rawson 57-66 was. Deputy Rawson observed some out of the normal movement from 4V block. At this time the 4V buzzer to the 5th floor control center went off. The inmate who was later identified as C.S. (DOB: ____ 1974) stated "help me, help me." I responded to 4V due to the fact I thought that inmate C.S. may be having a medical episode.

I opened the door to 4V block and observed inmate C.S. standing at the door with significant facial trauma. The inmate had visible bleeding from his nose and mouth along with significant bruising and swelling to both orbital sockets which were swollen shut. The inmate took one step out of the door and fell to the ground landing supine. As inmate C.S. was stepping out of the block I was able to observe several significant blood spots along the inner side of the door and floor of the entrance to the block. At this time I radioed "medical 4V and advised a 10-52 (ambulance) was needed." Several other deputies arrived at this time. The injuries noted upon initial appearance appeared to have been inflicted by another individual or individuals. The injuries were not consistent with self-inflicted.

Inmate C.S. was awake, alert, and mildly disoriented complaining of fully body pain. Inmate C.S. was able to tell me his full name. Inmate C.S.'s airway was open and intact with blood spiting from his mouth. Inmate C.S.'s breathing was increased and labored and lung sounds were clear. Inmate C.S. had a strong radial pulse palpated. The blood on inmate C.S.'s face was cleared and there were no visible signs of active bleeding to control. Due to inmate C.S.'s complaints and mechanism of injury I directed Deputy McClain 57-74 to hold manual cervical spine alignment until a C-Collar could be applied. Inmate C.S.'s jail issued shirt was cut off to expose any further injuries. Inmate C.S.'s right bicep was noted to have significant swelling and bruising. No further injuries noted. The extent of the observed injuries to inmate C.S. were facial. Upon examination of inmate C.S.'s mouth there were no noted missing teeth.

Linn County Correctional Center nursing arrived at this time and were able to provide a C-Collar that was applied without complications. While applying the C-Collar to inmate C.S., I additionally noted blood in both the inmates ears. It was unsure if this was from the extensive nose bleed or other facial injuries or if inmate C.S. was experiencing an internal head injury causing the bleeding. There was no bruising noted behind inmate C.S.'s ears at this time. Nursing staff obtained vitals of inmate C.S. and were reported, blood pressure 160/100, heart rate 125 strong and regular, oxygen saturation 98%, and respiratory rate 18 and labored. There was no noted change in inmate C.S.'s status upon reassessments.

COPIES: ☐ SHERIFF ☐ ADMINISTRATOR ☐ ASST. ADMINISTRATOR
☐ DISCIPLINARY FILE ☐ INMATE ☐ INMATE FILE

In accordance with Linn County Rescue 57 medical protocols I started 1 20G IV in the inmates left AC. 1000ml normal saline was infused. Area Ambulance arrived at this time and patient was rolled onto a blanket and moved to Area Ambulance cot where he was secured for transport. Area Ambulance requested no further medical assistance and transported the patient to Mercy Hospital for further evaluation.

This ends my involvement with inmate   C.S.   . I stayed in 4V block with other deputies cleaning the blood from the floor and walls.

....END OF REPORT

STAFF SIGNATURE: _____   APPROVED BY: _____

COPIES:   ☐ SHERIFF   ☐ ADMINISTRATOR   ☐ ASST. ADMINISTRATOR
          ☐ DISCIPLINARY FILE   ☐ INMATE   ☐ INMATE FILE

# LINN COUNTY CORRECTIONAL CENTER
## SUPERVISOR'S REPORT

**DATE: 05-10-22**
**REPORT BY: 57-20 Sgt. Hauskins**

On 05/27/22, I was the shift supervisor in the Linn County Correctional Center from 0830 to 1830 hours. At approximately 1652 hours, a possible medical was called out in 4V block. Staff advised they were not sure what was going on, however an inmate had hit the intercom and was saying "help, help, help". Myself and 194 Sgt. McElmeel responded to the double elevator and began making our way to 4th floor with other staff. While on the way to 4th floor, Deputy 57-32 Helms had made contact with the inmate and advised he had been assaulted and likely needed an ambulance due to the extent of his injuries. I advised 194 Sgt. McElmeel that I would go down to the office and begin looking at video, while he handled the scene.

On video, at approximately 1652 hours,  C.S.  (W/M  74) can be seen cleaning off his dinner tray and then entering the bathroom area. A few seconds later inmates Johnny Blahnik Church (W/M  87) and Gregory Richard Sills (W/M  73) both enter the bathroom area and begin to assault inmate  C.S.  . They drag inmate  C.S.  out into the day area and continue to punch and kick him. This continues for over a minute, causing several injuries to  C.S.  s head and face, resulting in a large amount of blood being visible on camera. During the assault, Church can be seen holding  C.S.  in place at one point while Sills repeatedly kicks  C.S.  in the face. Several more punches are delivered to  C.S.  , and Church eventually grabs onto a metal meal tray and begins striking  C.S.  in the head and face repeatedly. Church then grabs onto to  C.S.  from behind and appears to be saying something to him. He then throws  C.S.  against the door to the cell block and walks away.  C.S.  then activates the emergency intercom button and requests help and remains by the door to the cell block until staff arrive and remove him from the cell block. Inmate  C.S.  was transported by Area Ambulance to Mercy Medical Center at approximately 1710 hours. Both inmate Church and inmate Sills were handcuffed and moved to isolation without incident.

**END OF REPORT**

**OFFICER'S SIGNATURE:** _____ **APPROVED BY:** _____

COPIES: ☐ SHERIFF     ☐ ADMINISTRATOR     ☐ ASST. ADMINISTRATOR
☐ DISCIPLINARY FILE     ☐ INMATE     ☐ INMATE FILE

Supervisor's Report                    LCCC                    Page 1 of 1
                                Revised 4/2009

# LINN COUNTY CORRECTIONAL CENTER
## SUPERVISOR'S REPORT

**DATE: 5/27/22**
**REPORT BY: 194 Sgt. McElmeel**

On 05/27/22 at 1655 hours, I was working as the supervisor from 0830 to 2030 hours in the Linn County Jail. I was called to 4th floor V block in reference to a medical event. After reviewing video footage, an inmate identified as   C.S.  74 was observed going into the bathroom area at 1651 hours. Shortly after at 1652 hours, 2 inmates identified as Sills, Gregory Richard   73 and Church, Johnny Blahnik   87 enter the bathroom also. Church can immediately be seen throwing a punch at  C.S. . Church forces  C.S.  from the bathroom area into the dayroom as Sills kicks at  C.S. . Both inmates are observed throwing closed fist punches at  C.S. 's face in addition to kicks. Church can be observed forcing knee strikes to the head of  C.S. . Sills is observed stomping on the head of  C.S.  as he is attempting to defend himself from the continuous assault. Church can be observed holding  C.S.  as Sills kicks  C.S.  to the head multiple times. Church drags  C.S.  towards the sitting stool by the phone and grabs an empty metal tray. Church is then observed to strike  C.S.  multiple times with the metal tray. Church is observed to be saying something to  C.S.  as  C.S.  is covering his head. Church pushes  C.S.  away and walks away. Area Ambulance was called to transfer  C.S.  to Mercy to be treated. Prior to the arrival of Area Ambulance,  C.S.  was treated by assisting staff and jail nurses.  C.S.  was being assessed to be transferred to the UI Hospitals and Clinics to be further treated.

A video was saved as to the actions of Church and Sills.

**END OF REPORT**

**OFFICER'S SIGNATURE:** _Sgt M'El_ **APPROVED BY:** _____

COPIES: ☐ SHERIFF    ☐ ADMINISTRATOR    ☐ ASST. ADMINISTRATOR
         ☐ DISCIPLINARY FILE    ☐ INMATE    ☐ INMATE FILE



Government
Exhibit
2
Case
21-CR-2006-CJW
Sentencing



