IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ETHAN LEE PALMER

        Plaintiff,

vs.

BRIAN GARDNER, PETER WILSON,
UNKNOWN NAMED AGENTS OF THE
LINN COUNTY SHERIFF'S OFFICE,
PATRICK REINERT, and UNKNOWN
NAMED AGENTS OF THE U.S.
MARSHALS SERVICE

        Defendants.

CASE NO.  22-CV-0113-CJW-KEM

DEFENDANT
PATRICK REINERT'S
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

**DEFENDANT REINERT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

TIMOTHY T. DUAX
United States Attorney

C. SALVATORE D'ALESSIO, JR.
Director
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Torts Branch, Civil Division

EVELYN S. YARBOROUGH
Trial Attorney
Torts Branch, Civil Division

*Counsel for Patrick Reinert*
*in his individual capacity.*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................- 1 -

STATEMENT ...........................................................................................- 2 -

STANDARD OF REVIEW ...........................................................................- 5 -

ARGUMENT ............................................................................................- 5 -

I.    A *BIVENS* REMEDY IS UNAVAILABLE FOR PLAINTIFF'S NOVEL

CLAIMS ...............................................................................................- 5 -

    A.   This Case Presents a New *Bivens* Context. .....................................- 8 -

    B.   Special Factors and Alternative Remedies Counsel Against

    Recognizing a *Bivens* Remedy Here. .............................................- 10 -

II.   AUSA REINERT IS ENTITLED TO IMMUNITY.............................- 15 -

CONCLUSION ........................................................................................- 19 -

## INTRODUCTION

This case arises from an unfortunate incident. While housed in the Linn County Jail waiting to testify as a material witness in a federal criminal trial Plaintiff Ethan Lee Palmer was attacked and beaten by two inmates. Palmer sued, alleging that jail officials housed him in a general population pod with violent inmates despite jail policies requiring otherwise. But along with suing Linn County officials, he also sues Assistant United States Attorney ("AUSA") Patrick Reinert, a federal prosecutor. Palmer does not allege any particular actions AUSA Reinert took or failed to take. He simply alleges in broad strokes that AUSA Reinert somehow was deliberately indifferent to his safety. For several reasons, that is not a valid claim.

Palmer asks the Court to recognize a novel claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* has never been extended to claims akin to those Palmer asserts here, and binding precedent forecloses such an extension. This is especially the case under the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Egbert* established that extending *Bivens* necessitates a separation of powers evaluation, and it counsels that the Judiciary refrain from recognizing novel *Bivens* claims in favor of Congress fashioning a damages remedy. Additionally, AUSA Reinert is entitled to qualified immunity because Palmer has not plausibly alleged that AUSA Reinert's actions violated a clearly-established right. Accordingly, the claims against

1

AUSA Reinert should be dismissed with prejudice.

STATEMENT

Palmer was arrested as a material witness[1] to secure his testimony against Justin Michael Buehler in a federal criminal trial. First Amended Complaint, ECF Doc. 16 at ¶ 18 ("Amended Complaint"). On May 27, 2022, he was brought to the Linn County Jail. *Id.* Buehler, who was formerly in the Linn County Jail, was transferred from the jail that day. *Id.* at ¶ 19. Before Buehler's transfer, he had a recorded phone conversation with an unknown woman indicating that he knew that Palmer had been "picked up" and that was why he believed he was being transferred. *Id.* Buehler also spoke with fellow Linn County Jail inmates Johnny Blahnik Church and Gregory Sills. *Id.* at ¶ 20. Church had been bunkmates with Buehler. *Id.* at ¶ 23. Buehler gave Church and Sills Palmer's name and description and told them that Palmer had been arrested and would likely be housed in the Linn County Jail. Church assured Buehler that he would take care of it and said that he intended to give Palmer a bloody nose and a black eye in order to make him appear "fucked up when he testified [against Buehler]." *Id.* at ¶ 20.

Palmer asserts that upon his arrival and during intake he "advised some or all Linn County Defendants that he was a material witness and

---

[1] Under 18 U.S.C. § 3144 "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person[.]"

2

wanted protective custody." *Id.* at ¶ 21. He was originally placed in a single cell but an hour or two later was moved to a general population pod. *Id.* at ¶ 22. He alleges that his placement with Church violated Linn County's inmate segregation policies. According to the Amended Complaint, those policies provide: (a) "Inmates who have exhibited violent behavior shall be segregated if their behavior poses a threat to the safety of other inmates;" and (b) "[p]retrial detainees shall be segregated from inmates who are not pretrial detainees, whenever possible." *Id.* at ¶ 23 (quotations omitted). Palmer states that Church was an inmate convicted of a fatal stabbing. *Id.* at n.2.

While in the general pod, Palmer's bunkmate told him that the inmates were waiting for a "snitch" and when Palmer saw Buehler's name on the phone sign-up he realized he was in Buehler's former bunk in the pod. Palmer then "again pleaded with some or all Linn County Defendants to place him in a single cell, but his pleas were ignored." *Id.* at ¶¶ 24–25. Palmer says that minutes later Church and Sills violently attacked him by punching and kicking him and that he lost consciousness. *Id.* at ¶¶ 27–29. After he regained consciousness and alerted staff with the emergency call button, Palmer was treated at Mercy Hospital and University of Iowa Hospitals and Clinics *Id.* at ¶ 29. He later testified as a material witness at Buehler's criminal jury trial. Buehler was convicted. *Id.* at ¶ 33.

Acting pro se, Palmer filed a motion for leave to proceed in forma pauperis and tendered his initial complaint. ECF Docs. 1 & 1.1. The Court

screened his complaint under the Prison Litigation Reform Act, granted him pauper status, and directed the Clerk to file his complaint. *See* ECF Doc. 2 ("Initial Review Order"). Relevant here, the Court determined that Palmer stated a valid 42 U.S.C. § 1983 claim for deliberate indifference to his safety against the Linn County Defendants. *See* Initial Review Order at 7–9. Turning to Palmer's *Bivens* claims, the Court assumed for screening purposes that "*Bivens* claims and § 1983 claims are almost identical and involve the same analysis." *Id.* at 5 (citation and internal quotations omitted). It did not address whether Palmer's *Bivens* claim was viable under recent Supreme Court decisions like *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and *Egbert*. *See* Initial Review Order at 5, 9–11. The Court dismissed the *Bivens* claim against the United States Marshals Service, but the claim against AUSA Reinert survived screening. The Court explained that absolute prosecutorial immunity would not bar Palmer's claim that AUSA Reinert failed to protect him as a witness. *See id.* at 10–11. But it acknowledged that "[i]t may very well be that under this standard defendant Reinert is entitled to qualified immunity." *Id.* at 11. The Court also appointed counsel for Palmer. *Id.* at 12.

Acting through counsel Palmer has since filed his First Amended Compliant. The Amended Complaint alleges AUSA Reinert and unnamed United States Marshals Service employees "were deliberately indifferent to a substantial risk of harm to Palmer in various ways, including: (1) failing to provide necessary information to Linn County Defendants and their

4

personnel to properly classify and protect Palmer he was held at LCCC; and (2) failing to protect Palmer, their informant and material witness." Amended Complaint at ¶ 48.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In reviewing the complaint, the court must accept "the truth of all factual allegations in the complaint and make all reasonable inferences in favor of the nonmoving party" but need not "accept the truth of legal conclusions couched as factual allegations." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citations omitted). Whether a *Bivens* cause of action is available is a question of law. *Nebraska Beef, Ltd. v. Greening*, 398 F.3d 1080, 1083 (8th Cir. 2005). Likewise, whether a government official is entitled to qualified immunity also presents a question of law. *Wright v. United States*, 813 F.3d 689, 696 (8th Cir. 2015).

## ARGUMENT

### I.    A *BIVENS* REMEDY IS UNAVAILABLE FOR PLAINTIFF'S NOVEL CLAIMS

The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Whenever a plaintiff brings damages claims against federal

5

employees in their individual capacity for an alleged constitutional violation, the court must decide the antecedent question of whether a cause of action exists at all. *See Abbasi*, 137 S. Ct. at 1857. More than fifty years ago, the Supreme Court held in *Bivens*, that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. However the Supreme Court has only recognized such a remedy in three contexts: (1) in *Bivens* itself, under the Fourth Amendment for a violation of the prohibition against unreasonable searches and seizures in a private citizen's residence, 403 U.S. at 389, 397; (2) in *Davis v. Passman*, under the Fifth Amendment's Due Process Clause for gender discrimination, 442 U.S. 228, 230–32, 248–49 (1979); and (3) in *Carlson v. Green* under the Eighth Amendment for failing to provide needed medical treatment to an asthmatic prisoner, resulting in the prisoner's death, 446 U.S. 14, 16 n.1, 19 (1980). *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019) ("On only three occasions has the Supreme Court [recognized] a cause of action under *Bivens*.").

Since *Carlson*, the Supreme Court has not expanded *Bivens* to any new contexts or new category of defendant. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Instead, the Court has cautioned that authorizing a *Bivens* remedy "is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). The constitutional separation of powers is the reason. "When an issue involves a host of considerations that must be

6

weighed and appraised" separation-of-powers concerns dictate the question usually "should be committed to those who write the laws rather than those who interpret them." *Id.* (cleaned up); *see also Hernández v. Mesa*, 140 S. Ct. 735, 741–43 (2020).

The Supreme Court's approach to *Bivens* remedies has evolved over time. *Abbasi* articulated a two-step inquiry for evaluating whether to permit a *Bivens* action to proceed. First, the court must ask "whether the claim arises in a new *Bivens* context." *Id.* at 1864. That looks at whether the case "differs in a meaningful way" from *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1860. If so, a *Bivens* remedy is unavailable if any "special factor" indicates that the judiciary might be arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed" (the second step). *Id.*

Recently, in *Egbert*, the Court clarified that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. That test is all but fatal to new *Bivens* claims. Under it a court should dismiss a *Bivens* claim if "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858). In this case, there is no question that Palmer's failure-to-protect claim against an Assistant United States Attorney presents a new *Bivens*

context that cannot be litigated by way of an individual-capacity damages action.

A.    This Case Presents a New *Bivens* Context

A claim for failure to protect a detained material witness differs in a meaningful way from any of the three previous *Bivens* cases decided by the Supreme Court. The threshold inquiry of whether a proposed *Bivens* claim presents a new context is easily satisfied, as "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864. Differences meaningful enough to make a context new include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Here, Palmer alleges that AUSA Reinert "w[as] deliberately indifferent to a substantial risk of harm to" him by "failing to provide necessary information to Linn County Defendants and their personnel to properly classify and protect" him and by "failing to protect Palmer, their informant and material witness." Amended Complaint at ¶ 48. That claim arises in a new context; it invokes neither the Fourth nor Eighth Amendments at issue in *Bivens* and *Carlson*, nor does it involve the equal protection component of the Fifth Amendment's Due Process Clause as in *Davis*. *See Farah*, 926 F.3d

8

at 498 (concluding a case presents a new context when "[n]o Supreme Court case exactly mirrors the facts and legal issues presented" in a lawsuit).[2]

Of the three, Palmer's claim is most like *Carlson*. The two cases are nonetheless meaningfully different in the relevant sense. Palmer is a different type of plaintiff (a material witness detainee, not a convicted prisoner), and the constitutional right at issue is different (Fifth Amendment due process, not the Eighth Amendment right to be free from cruel and unusual punishment). *See Abbasi*, 137 S. Ct. at 1864 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth."). This case also involves a new category of defendant operating under a different legal mandate. *See id.* at 1859–60. *Carlson* involved Bureau of Prisons officials. The *Bivens* defendant here is an Assistant United States Attorney. Bureau of Prisons officials are responsible for, among other things, "the management and regulation of all Federal penal and correctional institutions" and "provid[ing] . . . for the safekeeping, care, and subsistence of all persons

_____

[2] Palmer appears to raise this claim under the Eighth Amendment. Amended Complaint at ¶ 12. But because he was a detained material witness, not a convicted prisoner, the Eighth Amendment does not apply. *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019), *cert denied*, 141 S. Ct. 1263 (2021). Palmer's claim arises under the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that "the Due Process Clause [of the Fifth Amendment] rather than the Eighth Amendment" is applicable to claims of pre-trial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); *see also Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014).

charged with or convicted of offenses against the United States, or held as witnesses or otherwise[.]" 18 U.S.C. § 4042(a)(1) & (2). Assistant United States Attorneys operate under a different legal mandate. Among other things they "prosecute for all offenses against the United States," and "prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned[.]" 28 U.S.C. § 547; *see also* 28 U.S.C. § 542. And "the sorts of actions being challenged" are different. *Farah*, 926 F.3d at 500. Palmer's claim appears to focus on federal officials' alleged failure to provide custody classification information that he alleges might have caused Linn County officials to act differently. *See* Amended Complaint at ¶¶ 35, 48.

Finally, as discussed below, Palmer's allegations implicate "potential special factors that previous *Bivens* cases did not consider." *Egbert*, 142 S. Ct. at 1803 (quotations omitted). In this case, for example, there are "alternative remedial structures in place" and Palmer's claim implicates potential "systemwide consequences of recognizing a cause of action," factors that were not considered in *Carlson*. *Id*. The context here is new, and in all events, this case presents several rational reasons why Congress is better suited to decide whether a damages remedy should be extended to it. *See id*. at 1805.

B.   Special Factors and Alternative Remedies Counsel Against Recognizing a *Bivens* Remedy Here.

The special factors inquiry is broad-ranging and simply asks "whether there is *any* rational reason (even one) to think that *Congress* is better suited

to 'weigh the costs and benefits of allowing a damages action to proceed.'"
*Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858). Several
"special factors" foreclose extending *Bivens* to this new context.

Recognizing the remedy Palmer seeks would disregard the "alternative
remedies available" that give reason "to think Congress might doubt the
efficacy or necessity of a damages remedy in a suit like this one." *Abbasi*, 137
S. Ct. at 1865 (internal quotation marks omitted). In *Egbert*, the Supreme
Court found that the plaintiff's ability to file a grievance with a Border Patrol
agent's employing agency was enough to foreclose extending *Bivens* relief.
The Court explained that "[s]o long as Congress or the Executive has created
a remedial process that it finds sufficient to secure an adequate level of
deterrence, the courts cannot second-guess that calibration by superimposing
a *Bivens* remedy." 142 S. Ct. at 1807. That was "true even if a court
independently concludes that the Government's procedures are 'not as
effective as an individual damages remedy.'" *Id*. (quoting *Bush v. Lucas*, 462
U.S. 367, 372 (1983)).

Similar considerations foreclose *Bivens* relief here. The Department of
Justice Office of Professional Responsibility is authorized to "[r]eceive,
review, investigate and refer for appropriate action allegations of misconduct
involving Department attorneys that relate to the exercise of their authority
to investigate, litigate or provide legal advice[.]" 28 C.F.R. § 0.39a(a)(1). The
office also may "[r]eport to the responsible Department official the results of

11

inquiries and investigations arising under" that authority "and, when appropriate, make recommendations for disciplinary and other corrective action[.]" *Id.* § 0.39a(a)(3). The Office also may refer other matters involving possible misconduct by Department employees to the Department's Office of Inspector General or another appropriate Department official. *Id.* § 0.39a(a)(4). The Department's Inspector General in turn is vested with broad authority to investigate allegations of criminal wrongdoing and administrative misconduct on the part of Department employees. 28 C.F.R. § 0.29a(a)(1); *see also id.* § 0.29e(5). Inspector General investigations "that result in findings of administrative misconduct are reported to management for appropriate disposition." *Id.* § 0.29e(d). These processes are comparable to the grievance procedure in *Egbert*. And like the *Egbert* procedure, their availability operates to foreclose *Bivens* relief here.

Other alternate processes also operate to foreclose the *Bivens* extension Palmer seeks. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, is an alternative remedial structure through which Congress provided a damages remedy for torts committed by federal employees in the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2674, 2679(b). That potential remedy against the government itself is another rational reason why Congress might not create an additional constitutional tort remedy against individual employees. *See Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020); *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *4

(10th Cir. Oct. 1, 2021). *Carlson* does not hold otherwise. It decided only that the FTCA is not "an alternative remedy which" Congress "*explicitly declared* to be a substitute for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19 (emphasis added) (citations omitted). *Carlson* did not address whether the FTCA operated as a "special factor" foreclosing a *Bivens* claim. *See id*. at 18. And it is the latter inquiry that now controls whether to extend *Bivens* relief. *See Egbert*, 142 S. Ct. at 1803.

Prison and jail administrative remedy programs are another alternative remedy counseling against extending *Bivens*. The Prison Litigation Reform Act ("PLRA") allows prisoner and detainee actions to proceed after an attempt to resolve them prior to litigation through exhaustion of prison or jail administrative procedures. *See* 42 U.S.C. § 1997e(a); *see also Abbasi*, 137 S. Ct. at 1865 (noting that the Court has said in dicta that the exhaustion provisions of the PLRA apply in *Bivens* suits). The PLRA "made comprehensive changes to the way prisoner abuse claims must be brought in federal court [without providing for a standalone damages remedy against federal jailers]," and therefore "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Abbasi,* 137 S. Ct. at 1865 (internal citation omitted). Palmer was a federal material witness held at the Linn County Jail. He had access to a grievance process and indeed used the grievance process. Amended Complaint; ECF Doc. 16-2 at pp. 50–51.

13

Importantly, the adequacy of an alternative structure has no bearing on whether it counts as a rational reason not to extend a *Bivens* remedy. The Supreme Court's *Bivens* jurisprudence now puts a premium on the separation of powers and the understanding that whether to create damages remedies for Executive Branch employee misconduct is a legislative function for Congress. And so "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1807; *see also Farah*, 926 F.3d at 502.

Finally, the criminal justice process necessarily involves a "reasonable division of functions" between law enforcement agents, prosecutors, magistrate judges, and jailors. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979). Extending *Bivens* as Palmer seeks could affect how that division of labor operates. Palmer's theory presupposes a duty on the part of upstream actors like prosecutors, or perhaps even magistrate judges, to ensure that jailors make proper custody classification decisions. The Supreme Court has determined that federal courts are ill suited to "predict the systemwide consequences of recognizing a cause of action under *Bivens*," and "uncertainty" on that question is another rational reason that "forecloses relief." *Egbert*, 142 S. Ct. at 1803, 1804 (cleaned up). Whether or not it would be sound policy to extend liability to a prosecutor in the circumstances alleged here is irrelevant; the question of whether to do so must be answered by Congress. *See Bush*, 462 U.S. at 390.

14

Under *Egbert*'s clarified framework, Palmer's *Bivens* claims against AUSA Reinert arise in a new context, and there are sound reasons to defer to Congress rather than create an implied damages remedy. For those reasons, Palmer's *Bivens* claim must be dismissed.

## II.    AUSA REINERT IS ENTITLED TO IMMUNITY.

Palmer's *Bivens* claim also should be dismissed because AUSA Reinert is entitled to qualified immunity.[3] Qualified immunity generally shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because the doctrine is not a "mere defense to liability" but "*an immunity from suit*," early resolution of the issue is essential. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)). Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds, Pearson*, 555 U.S. at 223. Therefore, it's appropriate to determine whether AUSA Reinert is entitled to qualified

---

[3] Palmer's claim does not appear to challenge the government's decision to secure his testimony at Buehler's criminal trial through a material witness warrant. Absolute prosecutorial immunity would bar such a claim in any event. *See Daniels v. Kieser*, 586 F.2d 64 (7th Cir. 1978); *Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011); *Odd v. Malone*, 538 F.3d 202, 212 (3d Cir. 2008); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 809 (N.D. Ill. 2014).

immunity based on the pleadings.

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations omitted, cleaned up). AUSA Reinert is entitled to qualified immunity under these standards for two reasons. First, Palmer has not sufficiently pleaded that AUSA Reinert knew or had reason to know that Church and Sills would attack or assault Palmer or have an opportunity to do so. Second, in any event AUSA Reinert violated no legal rule clearly established in the circumstances.

To recover under *Bivens*, a plaintiff must allege that each defendant personally participated in the violation of a clearly established constitutional right. *See Iqbal*, 556 U.S. at 676; *Abbasi*, 137 S. Ct. at 1860 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). To overcome qualified immunity at the pleading stage, then, plaintiffs must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). To do

16

that a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Palmer's well-pleaded allegations provide no grounds for such an inference.

Palmer alleges that AUSA Reinert was deliberately indifferent to the serious risks of harm he faced from his housing in the Linn County Jail. *See* Complaint at ¶ 48. And we assume here that is the correct standard for a detainee's due process failure-to-protect claim. *See, e.g., Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Meeting that standard "requires a plaintiff to show that defendants knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Massick v. N. Cent. Corr. Facility*, 136 F.3d 580, 581 (8th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Palmer's allegations against AUSA Reinert are insufficient to plausibly allege such a violation.

Palmer alleges only that on May 27, 2022, U.S. Marshals deputies arrested him on a material witness warrant and that after a hearing he was sent to the Linn County Jail. Amended Complaint at ¶ 16. On arrival, he spoke to Linn County officials and told them he was a material witness and wanted protective custody. *Id*. at ¶ 21. Initially he was placed in a single cell, but then he was moved to the same general population pod as Church, a convicted and violent murderer who assaulted him. *Id*. at ¶ 22. Palmer was moved to that general population pod despite the Linn County Jail's inmate

17

segregation policies. *Id*. Palmer does not allege that AUSA Reinert was aware of any of this. He also makes no allegation that his placement in the general population was AUSA Reinert's decision. As just mentioned, Palmer alleges that his placement actually violated the jail's inmate segregation policies designed to protect detainees like him. *See id*. Because Palmer does not allege AUSA Reinert's personal involvement in the jail's housing decisions, he has not sufficiently alleged that AUSA Reinert violated his constitutional rights, clearly established or otherwise.

Next, Palmer also has not alleged that AUSA Reinert's supposed conduct violated any legal rule clearly established in the circumstances. To be clearly established, a legal principle must be settled law, and it must "clearly prohibit the officer's conduct in the particular circumstances before him[.]" *Wesby*, 138 S. Ct. at 590. While it may be clearly established that prison and jail officials are bound by the Constitution to take "reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. at 832 (internal quotation omitted); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986) (pretrial detainee), there is no clearly-established rule that prosecutors must do so. *See Latimore v. Widseth*, 7 F.3d 709, 712–13 (8th Cir. 1993) (en banc) (granting qualified immunity to a prosecutor and observing he had "neither the responsibility nor the ability to protect" the plaintiff from harm inflicted by other inmates); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 362–63 (S.D.N.Y. 2000) ("[U]nder the Eighth Amendment prison officials may have a  duty to

18

protect the health and safety of inmates in their custody, but that duty does

not extend to prosecutors."); *see also Ying Jing Gan v. City of New York*, 996

F.2d 522, 534 (2d Cir. 1993) (observing it was unclear whether the law

"impose[d] the corresponding duty [of protection] on a prosecutor"). And so

the legal principle essential to Palmer's claim against AUSA Reinert lacks "a

sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at

589. And because Palmer has not alleged a clearly established violation, his

*Bivens* claim must be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, AUSA Reinert's motion to dismiss should be

granted.

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

TIMOTHY T. DUAX
United States Attorney

C. SALVATORE D'ALESSIO, JR.
Director
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Torts Branch, Civil Division

*/s/ Evelyn S. Yarborough*
EVELYN S. YARBOROUGH
NC Bar No. 56629
Trial Attorney
Torts Branch, Civil Division

19

United States Department of Justice
P.O. Box 7146
Washington, D.C. 20044-7146
Tel:     (202) 307-2106
Fax:     (202) 616-4314
E-mail:   Evelyn.S.Yarborough@usdoj.gov

*Counsel for Patrick Reinert in his individual capacity.*

## CERTIFICATE OF SERVICE

I hereby certify that on, February 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record by operation of the Court's CM/ECF System.

/s/ *Evelyn S. Yarborough*
Evelyn S Yarborough
Trial Attorney

20