IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ETHAN LEE PALMER, | No. 22-CV-113-CJW-KEM |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| vs. | |
| BRIAN GARDNER, *et al.*, | |
| Defendants. | |

This matter is before the Court on defendant Assistant United States Attorney Patrick Reinert's ("AUSA Reinert") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 21).[1] Plaintiff filed a timely resistance (Doc. 33) and AUSA Reinert filed a timely reply (Doc. 35). For the following reasons, the Court grants AUSA Reinert's motion.

## I. PROCEDURAL BACKGROUND

On September 21, 2022, plaintiff filed a pro se complaint and motion for leave to proceed in forma pauperis. (Doc. 1). Plaintiff's complaint was brought under both Title 42, United States Code, Section 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that defendants violated his constitutional rights in connection with failing to protect him from being attacked and beaten by other inmates in a local jail. After conducting an initial review, the Court granted plaintiff's motion for leave to proceed in forma pauperis and allowed plaintiff's

---

[1] Unless otherwise noted, docket references are to Case No. 22-CV-113-CJW-KEM.

complaint to proceed past the initial review stage as to certain defendants, including AUSA Reinert. (Doc. 2). The Court also appointed counsel to represent plaintiff. (*Id.*).

On January 24, 2023, plaintiff, with the assistance of counsel, filed an amended complaint against defendants, including AUSA Reinert. (Doc. 16).

## II. FACTUAL SUMMARY[2]

On January 7, 2019, plaintiff provided information to law enforcement agents that Justin Michael Buehler ("Buehler") regularly sold methamphetamine to other employees at a business in Independence, Iowa.

In January of 2019, plaintiff completed two controlled purchases of methamphetamine from Buehler, in assistance to the United States government. On February 2, 2021, a grand jury charged Buehler with two counts of distribution of methamphetamine, based on those controlled buys. (21-CR-2006-CJW-MAR, at Doc. 2). After several continuances, the case against Buehler was set for trial on June 7, 2022. (*Id.*, at Doc. 96).

On May 19, 2022, AUSA Jason Norwood filed a motion for a material witness warrant for plaintiff's arrest, noting that the government was unable to establish contact with plaintiff and there were outstanding warrants for his arrest. (22-mj-101, at Doc. 1). United States Magistrate Judge Mark A. Roberts granted the government's motion. (*Id.*, at Doc. 2). On May 26, 2022, agents arrested plaintiff on that warrant. (*Id.*, at Doc. 11). On that same day, plaintiff made an initial appearance before Judge Roberts, who appointed counsel to represent plaintiff. (*Id.*, at Docs. 4, 5, 6). The government, represented by AUSAs Norwood and Reinert, sought and the Court granted plaintiff's

---

[2] The facts under this section are drawn from plaintiff's amended complaint, although the Court includes only those facts it deems pertinent to plaintiff's claim against AUSA Reinert. The Court also take judicial notice of the court record in *United States v. Buehler*, 21-CR-2006-CJW-MAR, *United States v. Church*, 19-CR-00030-CJW-MAR, and *United States v. Palmer*, 22-mj-101-MAR.

2

temporary detention pending a hearing. (*Id.*, at Docs. 7, 8).[3] The United States Marshals transported plaintiff to the Linn County Corrections Center ("the jail") to be held pending the detention hearing.

On May 27, 2022, Buehler was to be transferred out of the jail, but prior to his transfer he had a recorded phone conversation with an unknown woman:

> Unknown woman: "Why, why would they do that?"
>
> Buehler: "Well probably because, fucking, they picked up [Plaintiff] yesterday."
>
> Unknown woman: "So what's that got to do with anything? I don't understand."
>
> Buehler: "Yeah I don't either, we have no contact on each other because he's snitch'n on me, but regardless [unclear whether Buehler says "I" or "they"] got people in different pods here, you know what I mean."

Also on May 27, 2022, and prior to his transfer from the jail, Buehler spoke with fellow inmates Johnny Blahnik Church ("Church") and Gregory Sills ("Sills"). Buehler told Church and Sills that plaintiff had been arrested in Black Hawk County, Iowa, and would likely be housed in the jail. Buehler provided plaintiff's name and description, telling Church, "[i]f they bring him here . . . ." Following this comment, Church assured Buehler that he would take care of it. Buehler also made it known to the entire cell block in the jail that plaintiff had cooperated with the government. Church told Sills that he intended to give plaintiff a bloody nose and a black eye in order to make him appear

---

[3] On June 1, 2022, the Court held a detention hearing at the conclusion of which Judge Roberts ordered plaintiff detained until plaintiff testified in the Buehler trial. Case No. 22-mj-101-MAR, at Docs. 13, 14. Both AUSAs Norwood and Reinert appeared on behalf of the United States at the hearing. (*Id.*, at Doc. 13).

3

"fucked up when he testified [against Buehler]." By May 27, 2022, Church had been convicted for the murder of Chris Bagley in 2018.

Upon his arrival at jail on May 27, 2022, and during his intake, plaintiff advised jail staff that he was a material witness and wanted protective custody. Jail staff initially placed plaintiff in a single cell, but an hour or two later moved him to a general population pod.

The jail inmate segregation policies that provide: (a) "Inmates who have exhibited violent behavior shall be segregated if their behavior poses a threat to the safety of other inmates."; and (b) "Pretrial detainees shall be segregated from inmates who are not pretrial detainees, whenever possible."

While plaintiff was in the general pod, plaintiff's bunkmate told him that the inmates were waiting for a "snitch," and when plaintiff saw Buehler's name on the phone sign-up he realized he was in Buehler's former bunk in the pod. With this additional information, plaintiff again asked jail staff to place him in a single cell, but his request was denied.

Shortly after, still on May 27, 2022, Church and Sills attacked plaintiff, hitting him and kicking him. During the assault, Church and/or Sills told plaintiff not to wear a wire, that plaintiff was a "rat", and insinuated that plaintiff would be assaulted again. Plaintiff alleges that none of the jail staff defendants came to plaintiff's aid during the attack. Following the attack and after regaining consciousness, plaintiff alerted jail staff with an emergency call button.

Plaintiff was subsequently treated at Mercy Hospital and University of Iowa Hospitals, where he was treated for extensive physical injuries, including facial trauma, an orbital fracture, a broken nose and teeth, and a fractured knee. Following the assault, jail staff segregated plaintiff from other inmates and then transferred him to the Hardin County Jail.

4

Case 1:22-cv-00113-CJW-KEM    Document 36    Filed 05/03/23    Page 4 of 18

According to plaintiff's Amended Complaint, defendant Brian Gardner, the Linn County Sheriff, claims that the jail staff was not provided any classification information, no-contact instructions, or otherwise regarding plaintiff from any federal authorities.[4] (Doc. 16, at 8).

In Count II of plaintiff's amended complaint, he alleges that AUSA Reinert and other federal defendants "were deliberately indifferent to a substantial risk of harm to [plaintiff] in various ways, including: (1) failing to provide necessary information to [jail staff] to properly classify and protect [plaintiff] he was held at [the jail]; and (2) failing to protect plaintiff, their informant and material witness." (*Id.*, at 11).

### III. DISCUSSION

AUSA Reinert moves to dismiss the complaint against him arguing that the claim against him is a novel and improper extension of the limited claims allowed under *Bivens*, and alternatively, that he should be granted qualified immunity on the claim. (Doc. 21). Plaintiff resists, arguing that his cause of action against AUSA Reinert does not arise in a new *Bivens* context and that AUSA Reinert is not entitled to qualified immunity because the duty to protect inmates was well established law. (Doc. 33). The Court finds that plaintiff's claim is a novel and impermissible extension of the narrow causes of action allowed under *Bivens* and, alternatively, that AUSA Reinert is entitled to qualified immunity because it was not clearly established law that a federal prosecutor has a duty to ensure the safety of an inmate in the custody of a county jail.

#### A.  *Plaintiff's Claim is Impermissible Under* Bivens

In *Bivens*, the United States Supreme Court authorized a cause of action against federal officials for damages based on a deprivation of constitutional rights. 403 U.S. at

---

[4] To be sure, plaintiff does not explicitly allege this is true in his complaint, but for purposes of this Order, the Court will assume that plaintiff is alleging that AUSA Reinert did not provide such information to the jail staff.

391-92, 399. The Supreme Court has only recognized a cause of action under *Bivens* on three occasions. *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019). In *Bivens* itself, the Supreme Court recognized a cause of action against federal officials for unreasonable searches and seizures under the Fourth Amendment. *Bivens*, 403 U.S. at 397. In *Davis v. Passman*, 442 U.S. 228, 230-32 (1979), the Supreme Court recognized a cause of action against a member of Congress under the Fifth Amendment Due Process Clause for gender discrimination in employment. In *Carlson v. Green*, 446 U.S. 14, 16 n.1, 19 (1980), the Supreme Court recognized a cause of action under the Eighth Amendment for deliberate indifference to a serious medical need of an inmate.

"Since then, the Court has become far more cautious and has, in fact, consistently refused to extend *Bivens* to any new context or new category of defendants for almost forty years." *Farah*, 926 F.3d at 498 (cleaned up). *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (identifying only *Bivens*, *Davis* and *Carlson* as recognized causes of action). Indeed, in 2017, the Supreme Court stated expanding *Bivens* is "now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). It follows, then, that there is a presumption against expanding *Bivens* beyond the few and narrow contexts explicitly recognized by the Supreme Court. *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005).

In 1994, in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court established the deliberate indifference standard that must be applied in a failure to protect an inmate case. In doing so, the Supreme Court presumed, without deciding, that a failure to protect claim could be brought under *Bivens*. The only question before the *Farmer* Court was the proper standard for deliberate indifference, not whether to extend *Bivens* and recognize an implied cause of action for Eighth Amendment conditions of confinement claims. *See Farmer*, 511 U.S. at 832 (stating that "[w]e granted certiorari because Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'")

6

(internal citations omitted). It is compelling to note, though, that after the *Farmer* decision, the Supreme Court did not include *Farmer* as one of the cases in which it had previously recognized a *Bivens* cause of action. *See Ziglar*, 582 U.S. at 135; *Hernandez*, 140 S. Ct. at 741. Thus, the Court finds that *Farmer* does not recognize a cause of action against federal officials for a failure to protect an inmate. *See, e.g.*, *Gater v. Carvajal*, 2:20-cv-00146-BSM-JJV, 2021 WL 868433, at *3 n.1 (E.D. Ark. Feb. 23, 2001) (finding that an alleged *Bivens* claim against federal prison officials for failure to protect an inmate constitutes a new *Bivens* cause of action because *Farmer* did not decide the issue and neither *Ziglar* nor *Hernandez* described *Farmer* as finding a new *Bivens* cause of action).

Plaintiff argues that the Supreme Court's failure to cite enumerate *Farmer* in its *Ziglar* decision shows "that it considers *Farmer* to not be 'meaningfully different' from *Bivens*, *Davis*, or *Carlson*," citing *Bistrian v. Levi*, 912 F.3d 79, 91 (3rd Cir. 2018). (Doc. 33, at 5 n.5). The Court disagrees. The Supreme Court carefully enumerated the cases it did; had it intended to extend the reach of *Bivens* actions to include *Farmer*, it would have said so. The Court will not extend the scope of *Bivens* actions by making a presumption about the meaning of the Supreme Court's failure to mention *Farmer* when enumerating the scope of recognized causes of action under *Bivens*. In that regard, the Court joins other courts in rejecting the Third Circuit's reasoning in *Bistrian*. *See, e.g.*, *Choice v. Michalak*, No. 21-cv-0060, 2022 WL 4079577, at *5 (N.D. Ill. Sept. 6, 2022) (rejecting *Bistrian* and argument that *Farmer* extended the scope of actions recognized under *Bivens*); *Johnson v. Santiago*, Case No. 20-CV-6345 (KAM) (LB), 2022 WL 3643591, at *3 (E.D.N.Y. Aug. 24, 2022) (same); *Marquez v. Rodriguez*, Case No.: 3:18-cv-0434-CAB-NLS, 2021 WL 2826075, at *7 (S.D. Cal. July 6, 2021) (same); *Oden v. True*, Case No. 3:18-cv-600-GCS, 2020 WL 4049922, at *5 (S.D. Ill. July 20, 2020) (same).

7

In determining whether to recognize a *Bivens* action, courts employ a two-step analysis. *Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020). First, courts consider whether the case falls within one of the three *Bivens* claims recognized by the Supreme Court. *Farah*, 926 F.3d at 498. If a court finds the Supreme Court has recognized the context previously, the case may proceed. *Id.* If the court finds the case does not fall within one of the recognized actions, courts assess whether "any special factors counsel hesitation before implying a new cause of action." *Ahmed*, 984 F.3d at 567 (quoting *Farah*, 926 F.3d at 498 (internal quotation marks and brackets omitted)). Courts must reject the new cause of action if there is reason to hesitate before applying *Bivens* to a new context. *Id.* at 567-68.

The Supreme Court has set forth the following criteria for determining whether a case presents a new *Bivens* context:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139-40. The Supreme Court has emphasized that "even a modest extension [of *Bivens*] is still an extension." *Id.* at 147.

As for the second consideration, the Supreme Court has stated:

> This Court has not defined the phrase "special factors counselling hesitation." The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional

8

action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

*Id.* at 136.

The Court will thus analyze plaintiff's claim against AUSA Reinert under the two considerations the Supreme Court has identified.

### 1. Does Plaintiff's Claim Present a New *Bivens* Context

The Court finds that plaintiff's claims presents a new *Bivens* context. Here, the position of the officer involved differs significantly from the context of other cases under *Bivens*. AUSA Reinert is a prosecutor whose duties are to investigate and litigate. Prosecutors do not have direct control over or responsibility for the care or treatment of others. Rather, they act through agents. Unlike the defendant in *Bivens*, a prosecutor does not personally arrest or search an individual; rather, a prosecutor is an actor in a process that authorizes a law enforcement officer to search or seize a person. Unlike a Congressman who hired an employee in *Davis*, a prosecutor has no employment relationship with an inmate. Unlike a prison official in *Carlson*, a prosecutor has no responsibility for or authority to manage and regulate the care of inmates in a detention facility. Rather, prosecutors have the responsibility to "prosecute for all offenses against the United States," "prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned," and the like. 28 U.S.C. § 547. Nowhere in their description of duties does there appear anything having to do with the care of inmates.

In analogizing prosecutors to prison official's duties to protect inmates in *Carlson*, plaintiff relies on the United States Attorney's Manual ("USAM") that requires prosecutors to notify detention facilities of a detainee's "cooperation with the government" and the "names/descriptions of other prisoners from whom that person

9

should be separated." (Doc. 33, at 10-11 (citing https://www.justice.gov/jm/jm-9-21000-witness-security, at 9-21.600(A)). Plaintiff's reliance on the USAM is unavailing. The USAM is not the Constitution and does not establish a Constitutional standard. It is an internal policy of the Department of Justice that does not convey any rights on third parties. *See United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (holding that the USAM does not create substantive or procedural rights enforceable by others). Regardless, nothing in the USAM imposes on prosecutors responsibility to protect detainees within a detention facility, which was at issue in *Carlson*.

AUSA Reinert urges that another difference between plaintiff's claim against him and recognized *Bivens* actions is that the constitutional right at issue is different. AUSA Reinert argues that unlike the three *Bivens* contexts the Supreme Court has previously recognized, this case does not involve a claim under the Fourth or Eighth Amendments. (Doc. 21-1, at 10-11). AUSA Reinert points out that, although plaintiff asserts an Eighth Amendment violation, as a pretrial detainee he is not covered by the Eighth Amendment but, rather, his claim is one brought under the Due Process Clause of the Fifth Amendment. (*Id.*, at 10-11, 11 n.2). Plaintiff argues that this is a distinction without a difference because, pretrial detainees are entitled to greater protection than inmates and the analysis under the Fifth Amendment Due Process Clause is identical to the analysis under the Eighth Amendment. (Doc. 33, at 9-10). The Court agrees with plaintiff. Although the constitutional provision at issue is technically different, is it not a meaningful difference.

Nevertheless, the Court finds that recognizing a cause of action against prosecutors for failing to act to protect inmates in the custody of third parties is meaningfully different and distinct from any cause of action ever before recognized by the Supreme Court as cognizable under *Bivens*. For that reason, the Court finds that plaintiff's claim against AUSA Reinert presents a new *Bivens* context.

10

## *2. Do Special Factors Exist Causing the Court to Hesitate*

Having concluded that plaintiff's claim against AUSA Reinert presents a new *Bivens* context, the Court next considers whether any special factors exist causing the Court to hesitate before finding a new implied cause of action under *Bivens*.

Courts are unlikely to entertain a damages action, such as recognizing a cause of action under *Bivens*, when Congress has not authorized a damages remedy even though it has taken other action in the area and when an alternative remedial structure exists. *Farah*, 926 F.3d at 500 (citing *Ziglar*, 582 U.S. at 137-38). The Court first considers whether an alternative remedial structure exists. The alternative remedial structure must offer "deterrence and compensation" that is "roughly similar" to that available under *Bivens*. *Minneci v. Pollard*, 565 U.S. 118, 120, 130 (2012). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022). That is "true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Here, the Department of Justice has an Office of Professional Responsibility authorized to "[r]eceive, review, investigate and refer for appropriate action allegations of misconduct involving Department attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice[.]" 28 C.F.R. § 0.39a(a)(1). That office may also refer matters involving possible misconduct to the Department of Justice's Office of Inspector General or the appropriate Department official. *Id.* § 0.39a(a)(4).

An inmate who believes he was wronged may bring a claim under the Federal Tort Claim Act ("FTCA"). 28 U.S.C. §§ 1346(b)(1), 2671-2680. The Supreme Court has recognized the FTCA may not provide an identical remedy as a *Bivens* action because

11

FTCA claims are brought against the United States and not an individual. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). The lack of an alternative remedy alone, however, does not compel the Court to imply a cause of action under *Bivens* here. *See Quintero Perez v. United States*, 8 F.4th 1095, 1105 (9th Cir. 2021) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988)).

The Court is also concerned about the impact extending *Bivens* to create a cause of action against prosecutors for failing to protect inmates. Law enforcement agents, like United States Marshals who decide where to house detainees, and jail officials in charge of caring for detainees, do not answer to prosecutors. They are not within a prosecutor's chain of command. A prosecutor cannot order or instruct law enforcement agents or jail officials to do anything. At most, AUSA Reinert could pass along information to these officials, but would have no ability to control or dictate what followed once he passed along the information. Creating a cause of action against a prosecutor under these circumstances fails to recognize the division of labor and authority between different actors in the criminal justice system and would create the danger of imposing liability over an actor who had no ability to control what anyone else would do who actual had control of an inmate. That causes this Court to hesitate before extending the scope of *Bivens* causes of actions to encompass plaintiff's claim.

In short, the Court finds that plaintiff's claim against AUSA Reinert arise in a new *Bivens* context that the Court finds is an improper extension of the scope of *Bivens* and cannot be recognized. For that reason, the Court grants AUSA Reinert's motion to dismiss.

### B. AUSA Reinert is Entitled to Qualified Immunity

Even if plaintiff had set forth a valid *Bivens* action, AUSA Reinert would be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated

a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts have the discretion to consider either of these factors first. *Ivey v. Audrain Cnty.*, 968 F.3d 845, 849 (8th Cir. 2020).

As to the first prong, courts "consider whether a constitutional violation . . . in fact occurred." *Jackson v. Stair*, 944 F.3d 704, 710-11 (8th Cir. 2019). "[T]he right allegedly violated must be defined at the appropriate level of specificity . . . ." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005). As for the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The Supreme Court has cautioned courts not to define clearly established law at too high a level of generality." *Ivey*, 968 F.3d at 849 (citing *Kisela v. Hughes*, --- U.S. ----, 138 S. Ct. 1148, 1152 (2018) (per curiam)). Plaintiff bears the burden of proving the law is clearly established. *Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011).

Initially, the Court considers whether plaintiff has alleged facts that, if true, would show that AUSA Reinert violated plaintiff's constitutional rights. Eighth Amendment protection extends to conditions of incarceration and confinement, including prison work assignments. *Farmer*, 511 U.S. at 833; *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007). An inmate must make two showings—one objective and one subjective—to successfully state an Eighth Amendment claim. *Ambrose*, 474 F.3d at 1075; *see also Kulkay v. Roy*, 847 F.3d 637, 642-43 (8th Cir. 2017) (setting out standard).

First, the inmate must show the alleged violation is "objectively [and] sufficiently serious." *Farmer*, 511 U.S. at 834 (citation and quotation marks omitted). An alleged violation is objectively and sufficiently serious when the inmate "is incarcerated under

13

conditions posing a substantial risk of serious harm." *Id.* Here, AUSA Reinert does not dispute that the danger to plaintiff was objectively sufficiently serious.

Second, the inmate must show the defendant official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This subjective inquiry is "analyzed in light of the specific claim raised." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). In a case challenging the conditions of confinement, the requisite state of mind is "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).

The Eighth Circuit Court of Appeals has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference. *See, e.g.*, *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011) ("Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." (quoting *Farmer*, 511 U.S. at 835)); *Stephens v. Johnson*, 83 F.3d 198, 200-01 (8th Cir. 1996); *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). In other words, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). An official's state of mind "must be measured by the official's

14

knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub*, 638 F.3d at 915 (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

Here, assuming AUSA Reinert had a constitutional duty to protect plaintiff from being assaulted by another inmate in a county jail, plaintiff has not alleged facts in his Amended Complaint, even if taken as true, that would show a constitutional violation. For plaintiff to prevail on this claim, he would have to show that AUSA Reinert was deliberately indifferent to the need to protect plaintiff. Mere negligence is not enough. Plaintiff's complaint fails to allege any facts that would show deliberate indifference by AUSA Reinert. Plaintiff's complaint does not allege that AUSA Reinert was even aware which jail the Marshals placed plaintiff, or where Buehler was housed. Plaintiff must allege those facts in his complaint and he did not do so. Nor does plaintiff allege in his complaint that AUSA Reinert was aware of any facts showing a threat to plaintiff. Although plaintiff alleges he communicated the danger to certain jail personnel, he does not allege that he communicated any such facts to AUSA Reinert. At most, plaintiff has only alleged that AUSA Reinert should have anticipated a danger to him and was negligent in failing to communicate that danger to jail staff.

In his resistance to the motion to dismiss, plaintiff insists that "the Federal Defendants (including Reinert, a government official and AUSA during Buehler's prosecution during all times relevant to [plaintiff's] First Amended Complaint) had [plaintiff] transferred to the [jail] . . . without providing [the jail] any classification information, no-contact instructions, or otherwise regarding [plaintiff]." (Doc. 33, at 8). There are several problems with this sweeping assertion. First, plaintiff's Amended Complaint does not actually allege these facts. It does not allege that AUSA Reinert had anything to do with the decision of where to house plaintiff. Nor does it explicitly allege that he failed to provide information to the jail; rather, as noted, it only alleges that the Linn County Sheriff alleges that the federal defendants failed to provide that information.

15

Further, the record shows that two AUSAs were assigned to the Buehler case, a different AUSA actually filed the motion for a material witness warrant, and both AUSAs appeared at the initial appearance and the later detention hearing. Nothing in plaintiff's Amended Complaint, or in his resistance to the motion to dismiss for that matter, alleges any facts that shows that AUSA Reinert is any more responsible than AUSA Norwood for allegedly failing to provide the jail with the information plaintiff believes should have been conveyed.

Plaintiff also alleges in his resistance that AUSA Reinert knew that plaintiff was particularly vulnerable to attack when he was sent to the jail. (Doc. 33, at 8). Again, the problem with this assertion is that plaintiff's Amended Complaint does not allege facts from which this conclusion could be drawn. The Amended Complaint does not allege that AUSA Reinert had any role whatsoever is deciding where plaintiff would be housed pending a detention hearing on the material witness warrant. Nor does the Amended Complaint allege that AUSA Reinert was somehow informed of where he was placed. Nor does the Amended Complaint allege the AUSA Reinert knew where Buehler was housed or that he had any personal knowledge that would alert him that plaintiff's placement in the jail (assuming he knew where plaintiff was placed) would bring him into contact with Buehler or anyone associated with Buehler. Plaintiff asks the Court to take judicial notice that AUSA Reinert was the prosecutor on the case against Church and "therefore knew or should have known" that the Marshals were placing plaintiff in "a facility that was holding Church, a convicted and violent murderer." (Doc. 33, at 6 n.6). The Court can take judicial notice that AUSA Reinert was a prosecutor assigned to the Church case, but nothing about that provides a factual basis to establish that AUSA Reinert knew where Church was housed or that he would come into contact with plaintiff. Again, plaintiff did not allege facts in the complaint that would establish this level of

16

knowledge by AUSA Reinert and that is something of which the Court cannot take judicial notice.

Plaintiff argues that AUSA Reinert is not entitled to qualified immunity because such immunity applies only to discretional acts and AUSA Reinert was compelled to act because the USAM required him to notify jail authorities of the need to separate plaintiff from others. (Doc. 33, at 14-15). As AUSA Reinert has pointed out, however, the Eighth Circuit Court of Appeals "has rejected that argument and 'suggested that the exception to qualified immunity for non-discretionary or ministerial acts is a "dead letter."'" (Doc. 35, at 3 (quoting *Anderson v. City of Minneapolis*, 934 F.3d 876, 884 (8th Cir. 2019) and *Sellers v. Baer*, 28 F.3d 895, 902 (8th Cir. 1994)). Further, as previously noted, the USAM is an internal policy that does not establish mandatory conduct and is not enforceable by others. Regardless, AUSA Reinert's alleged failure to comply with an internal department policy may constitute some evidence to show that he was negligent in carrying out his duties, it does nothing to show that AUSA Reinert was intentionally and deliberately indifferent to plaintiff's safety.

Plaintiff has also failed to alleged facts that would show AUSA Reinert violated any legal rule that was clearly established by the circumstances. With *Farmer* and its progeny, there is some clearly established authority about the duties prison official owe to detainees, but there is no such authority establishing what duty a prosecutor has to protect a detainee. In short, there was no case law that would have informed AUSA Reinert that he was violating plaintiff's constitutional rights by failing to notify jail authorities that plaintiff was a cooperating witness who needed extra protection.

Accordingly, even if the Court were to extend a *Bivens* action to cover plaintiff's claims against AUSA Reinert, it would find AUSA Reinert entitled to qualified immunity. Plaintiff's amended complaint fails to allege facts that show that AUSA Reinert was deliberately indifferent to plaintiff's safety.

## IV. CONCLUSION

For the reasons stated, the Court grants AUSA Reinert's motion to dismiss. (Doc. 21).

**IT IS SO ORDERED** this 3rd day of May, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa